[No. 7906. Department Two. June 11, 1909.]

JOHN B. NEEL, *Respondent*, v. KING COUNTY, *Appellant*.[1]

HIGHWAYS—DUTY TO MAINTAIN—USE OUTSIDE HIGHWAYS—BAR-
RIERS. A county is liable for injuries sustained by a traveler by
team, who fell into a washout in close proximity to a road of such
a dangerous character that barriers should have been erected, where
the place outside the road line had been used as a part of the county
road and as a continuance thereof, without being marked off there-
from, so that persons using ordinary care would be liable to drive
thereon.

SAME—INSTRUCTIONS AS TO DUTY—INSURER OF SAFETY. In an
action for injuries sustained by a traveler by team in falling into
a washout, along a county road, an instruction requiring a county
to maintain its highways in a reasonably safe condition for public
travel, is not erroneous in that it makes a county an insurer of
the safety of its roads, where by other instructions the jury were
told the county would not be liable on account of the washout unless
ordinary prudence would have anticipated and guarded against it.

Appeal from a judgment of the superior court for King
county, Gilliam, J., entered November 21, 1908, upon the ver-
dict of a jury rendered in favor of the plaintiff, in an action
for personal injuries sustained through a defective highway.
Affirmed.

*K. Mackintosh, John W. Whitham, George F. Vanderveer,*
and *M. H. Ingersoll,* for appellant.

*John B. Hart* and *Robert H. Evans,* for respondent.

DUNBAR, J.—The complaint alleges that the defendant,
King county, maintains, among other roads and highways, a
road and highway passing along through the town of Falls
City and along a river bank, which road has been in existence
for many years previous to the 30th day of November, 1907,
the date of the accident which is the subject of this suit; that
previous to said day, it had at all times been maintained in a
safe condition for the traveling public for teams, etc.; that
the plaintiff was familiar with said road as it had existed

[1]Reported in 102 Pac. 396.

for years previous to said day; that on said day the highway had become dangerous to life and limb of travelers, in that through the center of the highway and road a large washout occurred which the defendant permitted to exist; that said washout was to a depth of from eight to twelve feet across the entire width of the road, as it passed over the principal street of Falls City and as it bordered or skirted the river bank; that said washout had occurred several days previous to the 30th day of November, 1907, and that the condition of the road was well known to the authorities, etc.; that on the 30th day of November, 1907, and in the nighttime of said day, while the defendant carelessly and negligently maintained and permitted to exist said ditch, which constituted a death trap and man trap, without railings or warning signals of danger, plaintiff with other persons in a wagon, driven by horses, driving over said highway, not knowing the condition of the road, approached said road, passing over the said road from the north and west, and passed over the bridge spanning the Snoqualmie river; that immediately after passing over said bridge, he turned on to the right and passed down the highway running through the town of Falls City; that the night was dark, and there were no railings or barriers to prevent one from driving into said ditch, and that owing to the darkness of the night and the absence of railings or barriers, the team stepped off said bridge and highway, causing the accident complained of. It seems that there was a barrier crossing that portion of the street next to the sidewalk. As we understand it, the street or roadway was on the south side of the Snoqualmie river, and all the buildings were on the south side of the street. The defendant answered, denying negligence on its part, and alleging contributory negligence on the part of plaintiff in driving around the barriers which it had erected over a portion of the road, and proceeding to travel on that portion of the road outside of the barrier. The case was tried to a jury, and verdict was rendered in favor of plaintiff for the sum of $5,510.

There is a sharp conflict in the testimony as to whether the barrier which had been erected by the authorities reached across the full width of the road, or whether the place at which the plaintiff was driving at the time of the accident was a part of the highway, or whether it was north of the highway; and that is, in fact, the main question in the case. The assignments of error on this appeal are that the court erred, (1) in denying defendant's motion to take the case from the jury at the close of plaintiff's evidence; (2) in overruling defendant's motion for a nonsuit; (3) error in admission of testimony; (4) error in giving and refusing to give instructions to the jury; (5) in denying defendant's motion for judgment notwithstanding the verdict; (6) and (7) in overruling defendant's motion for a new trial and entering judgment in favor of plaintiff.

It is contended by the appellant that there is no substantial testimony to the effect that the respondent was on the highway at the time the accident occurred. It is also contended that it is immaterial whether or not respondent was on the highway when he drove into the washout, as the court took that question from the jury by giving the following instruction:

"Should you further find that the wagon went into said ditch beyond and outside of the road line, but that the place where it went in was not marked off from the county road and was theretofore and then used as a part of the county road, and that its general condition was a smooth surface and a continuance of the county road and that the place where the injury occurred was close to the line of the county road, and that persons using ordinary care would be liable to drive off of the road and into the land adjoining, if you find these things, then I instruct you that it makes no difference whether the accident occurred on the roadway proper or near it;"

because, as is said by the appellant, this eliminates from the consideration of the jury the question of whether the respondent was actually on the roadbed at the time the accident occurred. It is claimed that this instruction is in vio-

lation of the law, and many authorities are cited to sustain that contention. Among others, appellant quotes from Elliott on Roads and Streets (2d ed.), § 621, where it is said:

"The general rule appears to be that the duty to keep in repair extends only to the 'traveled path' or portion of the way in actual use, provided it is wide enough to be safe. Necessity and expediency, without anything more, would probably justify such a rule in the case of country roads."

The cases cited by that author to sustain the text, and those cited by the appellant, we have examined, and it appears to us that neither the text cited nor the authorities referred to are in point. It is, no doubt, true that the general rule is that the duty of the county or the city is only to keep in repair that portion of the way in actual use, provided it is wide enough to be safe. But there is an element in the instruction here that is not discussed or decided in the cases cited by appellant, and we have been unable to find any authority in text books or cases where it is held that, where a county uses and keeps in repair a certain territory as a road for travel, and has invited the public to use it as a road, it can escape liability for not mending or guarding the danger suddenly created across the highway, simply because the pitfall or danger was not within the limits of the road to which the county held the legal title. That is exactly the proposition involved in this instruction; for it will be noted that the court incorporated the qualification that the location outside of the road line was theretofore and then used as a part of the county road. This doctrine is based, it seems to us, on simple justice and fair play, on the theory that the county ought to be estopped from denying responsibility where it had issued an invitation to the public to travel on the location adjacent to a county road as a part of the road, and where the road was in such position topographically as to mislead the public, there being no defined boundary between the road and that territory which the public had been invited to travel upon as a part of the road. This doctrine of

liability under such circumstances was announced by this court in *Prather v. Spokane*, 29 Wash. 549, 70 Pac. 55, 92 Am. St. 923, 59 L. R. A. 346, where it was held that, where a city, although not required so to do, constructed a bicycle path, it would be held responsible for the maintenance in a reasonably safe manner, the court saying:

"It is first argued by the appellant that the city was not required to construct these bicycle paths; that it was optional with the city to do so or not, as it chose; and that, therefore, the liability arising from the mandatory duty is not imposed upon the appellant. Conceding this to be the rule, it does not apply in this case, because it is alleged that the path was constructed. The city having exercised its option to construct the path, the same rules must apply to the method and care in the construction and maintenance as applies where there is a duty imposed by law, viz., to so construct and maintain the path or street or walk that the same may be reasonably safe for the ordinary use for which it was intended;"

citing many cases to sustain the text.

Appellant refers the court to 15 Am. & Eng. Ency. Law (2d ed.), p. 455 (cited in appellant's brief as p. 451), where it is said:

"It is well settled that a municipality is under no obligation to fence its road or to put up barriers simply to prevent travelers so straying from the highway, and that, consequently, if a traveler so strays on to adjoining property and there meets with an accident at some distance from the highway, the municipality is not liable, though the barrier would have prevented such straying."

The author continued, however, in the next paragraph to say:

"If there is a dangerous place, however, such as a declivity or excavation, so close to the highway or to the traveled part thereof as to render the latter unsafe for travelers in the absence of a railing or barrier, the want of such railing or barrier constitutes a defect in the highway itself, for injuries from which the municipality is liable. But the danger which requires a barrier must be of an unusual character,

such as a bridge, declivity, excavation, steep bank, or deep water, and a space adjoining a road or street may be left without a barrier though it be rough and entirely unsuitable for travel."

The text falls squarely within the facts in this case, the testimony showing that the excavation or washout into which the plaintiff fell was very dangerous and in very close proximity to the street, conceding that it was not in the street, and of such an unusual character that it should have been barred from travel to the unsuspecting and unnotified. The same authority says that the question of proximity is to be considered with reference to whether the highway was traveled or worked, rather than as laid out.

It was held in *Willey v. Ellsworth,* 64 Me. 57, that ways may be established by proof of public user or by a laying out by the constituted authorities; that the limits of the way are determined by user or by location; that however a way is shown to exist, it is one with limits defined by user or location.

In *Moran v. Inhabitants of Palmer,* 162 Mass. 196, 38 N. E. 442, it was held that an instruction, to the effect that the side of the street, although never actually wrought as a sidewalk, when used and permitted and intended by the town to be used by persons on foot was a part of the traveled highway, was correct, and that a side of a street may be in such form and so used with the knowledge and acquiescence of the town as to be a portion of the traveled part of the way which the town is bound to keep in repair, even though no work has been done upon it to fit it for the use of pedestrians; citing *Lowe v. Clinton,* 136 Mass. 24, and *Aston v. Newton,* 134 Mass. 507, 45 Am. Rep. 347.

In *Wakeham v. St. Clair,* 91 Mich. 15, 51 N. W. 696, where in an action against a town for personal injuries occasioned by a defective highway, the evidence showed that it was along the bank of a river; that to protect the highway, the town had constructed a breakwater by laying a line of

logs parallel with the river, and piling transversely thereon slabs to the height of the highway; that the space between the slabs and the bank had been filled in with earth, which extended half way over the slabs; that the roadbed was narrow; that at a certain point in the highway there had been a mud hole for some time; that there were two dangerous holes at the edge of the slabs, a few feet from the side of the mud hole; and that the town authorities knew of the condition of the road, and had placed a danger signal in the first hole, but left the second unguarded; it was held that, if the second hole was so near the way intended for travel that persons would be likely to get into it in seeking to avoid the mud hole, the town was guilty of negligence in allowing it to remain there for an unreasonable length of time. It will be seen that the circumstances and principles of the case were exactly on a par with the case at bar, where a portion of the street had been barricaded and the other portion, which was immediately adjacent to it, had been left without a guard.

In *Aston v. Newton, supra,* it was held that if, between the sidewalk of a street in a city and that portion of the street wrought for a carriage, there is a grassed space, over which a footpath has been worn by use by persons having occasion to enter another street abutting on this street but not crossing it, or to come in the opposite direction, the city is liable to a person injured by a defect in such path, if the path was known to and recognized by the city as a part of the wrought line of travel, in the absence of any path or other provision made by the city for crossing the street at or near the locality in question, or of any barrier or other warning to indicate that the path as actually used was unsafe or unsuitable. To the same effect is *Watson v. Proprietors of Lisbon Bridge,* 14 Me. 201, 31 Am. Dec. 49, and *Saltmarsh v. Bow,* 56 N. H. 428, where it was held that, if a town suffers the traveled part of a highway to become widened, so as to hold out to the traveler that the whole width is equally suitable for the public travel, it is answerable for damages grow-

ing out of defects in the part so widened; and, in fact, we think this is almost the universal authority when the cases cited are properly analyzed.

It is the claim of the respondent, and there is sufficient testimony to support that contention, if the jury believed it, that all the land between the sidewalk on the south part of the street and the telephone poles on the river bank, had been recognized and used as the public road, and that work had been done on all parts of it; so that, in the absence of error in the instructions, the determination of the questions of fact by the jury is conclusive.

It is also contended that the court erred in giving the following instruction:

"It is the duty of the county, such as the county of King, to maintain its public highways and roads in a reasonably safe condition for public travel. That duty must be exercised by the officials of the county having charge of the public highways, and failure to exercise that duty and failure to maintain its highways in a reasonably safe condition for public travel, such as might be reasonably expected by those who travel over these highways, would constitute negligence on the part of the county."

It is contended that this instruction makes the county an insurer of those who travel upon the highway, and that there is a difference between using reasonable diligence in maintaining a highway in a reasonably safe condition for public travel, and maintaining its public highways in a reasonably safe condition for public travel. But the instruction of the court on this particular proposition, when viewed as a whole, is not prejudicial, for after giving that part of the instruction complained of, the court proceeded:

"The county officers are not required under the law to anticipate unforeseen or unusual occurrences, such as an unusual flood or freshet, and such occurrences in the law are considered to be the acts of God, which county officers are not required to guard against. So the first thing for you to determine in this case is whether or not this washout that

32—53 WASH.

occurred in the street was one which ordinary prudence would have anticipated and guarded against. If ordinary human prudence and caution would not have anticipated and guarded against it, then it was not negligence on the part of the county that the washout really occurred. Under these circumstances, it would be considered an act of God, so that for the washout itself, the county would not be responsible. If, however, it was such an occurrence that human prudence would ordinarily foresee and ordinarily in the exercise of reasonable care would anticipate and guard against, then it would not come under the class of occurrences known as the act of God, and it would be negligence on the part of the county not to have guarded against it or prevented it."

So that the duty of the county after all was gauged by ordinary human prudence and caution, and the county was not, under such an instruction, made an insurer of the safety of those who travel along its highways. The instruction as a whole was clear and explicit, and covered every point involved in the controversy.

We are unable to discover that the court committed error in giving or refusing instructions, or in the admission or rejection of testimony. While the amount of the verdict in this case from one standpoint seems to be large, yet from the legitimate testimony presented in the case, we are not able to say that it is the duty of this court to interfere with the verdict of the jury in that regard.

The judgment will be affirmed.

RUDKIN, C. J., MOUNT, CROW, and PARKER, JJ., concur.