[No. 9993. Department One. June 21, 1912.]

FREDERICK LEBER, *Appellant*, v. KING COUNTY, *Respondent*.[1]

HIGHWAYS—NEGLIGENCE—LIABILITY—COMPLAINT—SUFFICIENCY. A
county is not required to maintain guard rails along a hillside
county road, constructed fifteen feet wide and safe for ordinary
travel, where there is no extraordinary condition or unusual hazard,
and is therefore not liable for injuries caused by want of a railing,
although it is alleged in the complaint that a frightened horse shied,
lost his footing and fell eight or ten feet down a "steep incline and
sheer decline and pitfall," there being no allegation that the bank
was perpendicular or vertical.

Appeal from a judgment of the superior court for King
county, Albertson, J., entered September 30, 1911, dismiss-
ing an action in tort, upon sustaining a demurrer to the
complaint. Affirmed.

*William Parmerlee*, for appellant.

*John F. Murphy* and *Robert H. Evans*, for respondent.

PER CURIAM.—This is an action to recover damages for
personal injuries. A demurrer to the complaint for want of
facts constituting a cause of action having been sustained,
and the plaintiff electing not to plead further, judgment of
dismissal was rendered against him accordingly. From this
disposition of the cause, the plaintiff has appealed.

The contentions of counsel require us to notice only the
following allegations of the complaint:

"That the said defendant on the 31st day of August, 1910,
and for a long time prior thereto disregarded its said duty
in this, that on said date and for a long time prior thereto
on the county road and public highway and about one-quarter
of a mile east of the city limits of Kent, on that certain public
road and highway known as the Black Diamond Road, and
about 400 feet west from where the Molke Road branches
off therefrom, said defendant so carelessly and negligently
maintained and suffered to exist upon said highway, on the

[1] Reported in 124 Pac. 397.

right-hand side thereof traveling eastward from Kent and not separated from said road and highway in any manner whatsoever, a steep, precipitous and sheer decline and pitfall of some eight or ten feet to the bottom thereof measuring from the level of said road and highway, and that the said defendant carelessly and negligently suffered and permitted said decline and pitfall to be and remain at said place without any protection to travelers and persons using said highway and negligently and carelessly failed to erect barriers or a railing or anything whatsoever to keep or prevent a traveler or his horse and wagon from being thrown and precipitated off of said road and down and over said steep bluff and declivity, and that said conditions above described had existed at said place with the knowledge of the said defendant for a long period of time before the plaintiff was injured thereat as hereinafter set forth.

"That on said 31st day of August, 1910, the plaintiff was driving his horse and wagon along said road at said place above described, which said road at said place is very narrow, not exceeding 15 feet in width, and the said plaintiff in order that other vehicles might pass was keeping to the right side of said road, and other persons and their teams and automobiles were about to pass the plaintiff in an opposite direction and the horse and buggy of plaintiff was compelled to take a position very close and near to said declivity and precipice and the horse of plaintiff in getting his position to avoid contact and collision with other vehicles, automobiles and horses on said road, shied or veered to the right and lost his footing and fell down and into said declivity and precipice, throwing the plaintiff from the seat of his said wagon a distance of some sixteen feet, where the plaintiff struck logs and other hard substances lying in said declivity.

"That by reason of there being no guard rails or other obstruction or barrier at said dangerous place to prevent said horse and wagon from falling over the same, and by reason of the carelessness and negligence of the defendant in maintaining and suffering its road to remain in said condition at said time and place the plaintiff was so thrown over said precipice and was injured."

It is at once apparent that the only negligence of the county relied upon by the appellant for recovery is the failure of the county to maintain a railing or barrier at the side

of the road next to the declivity, since no facts are alleged indicating other defects in the highway rendering it unsafe for travel by teams and vehicles. Appellant relies primarily upon the text of 15 Am. & Eng. Ency. Law (2d ed.), page 455, where it is said:

"If there is a dangerous place, however, such as a declivity or excavation, so close to the highway or to the traveled part thereof as to render the latter unsafe for travelers in the absence of a railing or barrier, the want of such railing or barrier constitutes a defect in the highway itself, for injuries from which the municipality is liable."

This text was quoted with approval in *Neel v. King County*, 53 Wash. 490, 102 Pac. 396. That it was properly applied as the governing principle in that case there can be no doubt. The danger there was a washout so near the traveled highway as to make the danger obvious or unusual. The duty to put barriers upon a highway, although travel thereon be in a degree dangerous, is not absolute. The law does not require it unless the danger complained of is unusual. The text just quoted continues:

"But the danger which requires a barrier must be of an unusual character, such as a bridge, declivity, excavation, steep bank, or deep water, and a space adjoining a road or street may be left without a barrier though it is rough and entirely unsuitable for travel."

The text continues:

"In determining the necessity of a barrier the primary question is whether the highway is safe without one, and this quite generally resolves itself into considerations of the character and proximity of the danger. The question of proximity is to be considered with reference to the highway as traveled or worked rather than as laid out. The general character of the road . . . may . . . be considered, . . ."

Here we have a road graded and in repair, fifteen feet wide, which is wide enough for all ordinary travel unless it be in the populous centers of the state. We think it will require no argument to make plain the fact that here there was no extra-

ordinary condition or unusual hazard of the road. A similar condition is to be found upon practically every mile of hill road in the state. The same hazard may be encountered a thousand times in every county of the state. Roads must be built and traveled, and to hold that the public cannot open their highways until they are prepared to fence their roads with barriers strong enough to hold a team and wagon when coming in violent contact with them, the condition being the ordinary condition of the country, would be to put a burden upon the public that it could not bear. It would prohibit the building of new roads .and tend to the financial ruin of the counties undertaking to maintain the old ones. The unusual danger noticed by the books is a danger in the highway itself. It may become a question for the jury. Such was the condition in the *Neel* case.

The reasoning of the court in the case of *Adams v. Natick*, 13 Allen 429, is apt and unanswerable:

"Towns are not required to fence their roads with a view to prevent frightened animals from escaping out of the limits of the highway, even when the near location of a railroad may render such occurrences probable. Neither are they bound so to construct their roads that a horse, frightened by any cause, and rushing out of the track which is wrought for travel, will not expose himself nor the carriage and its occupants to injury from the embankments, gutters, or other obstructions upon the sides of the road, either within or without the limits of the highway. From the necessity of the case, by the forming of the road-bed, and the grading and draining necessary for its proper construction, the sides of the road will unavoidably be put into a condition which is unsuited to the rapid passage of horse and carriage transversely. But towns are not therefore required to guard against such occurrences by fencing up the road-bed, so as to prevent escape therefrom. They are bound to provide suitable railings against precipices, excavations, steep banks, deep water, etc., within or without the limits of the road, if they are so imminent to the line of public travel as to expose travelers to unusual hazard. It is difficult to define the extent of this obligation by any general proposition. Whether

or not such a railing is necessary for the reasonable security of the public is a question which depends very much upon the circumstances of the particular locality, in reference to which the question arises. But the essential and invariable term, or element, in all cases where a railing is required, is some dangerous object or place outside of the required railing, in or upon which the traveler may come to harm, if not warned or detained therefrom by the railing. The liability of horses to fright from the passage of railway trains nearby may render more imperative the necessity and the duty of maintaining a railing, wherever there is occasion for a railing. But whether the absence of a railing is a defect, and the neglect to maintain one a breach of duty which will render a town liable, must be determined by the character of the place or object, between which and the traveled road it is claimed that the barrier should be interposed."

We take it, then, that the rule contended for applies only where a traveler exercising ordinary care would not expect to find a danger, or where the natural or surrounding conditions would suggest protection; as, for instance, an obstruction in the highway or a washout, a sheer precipice, excavation, chasm, trestle, or a bridge, thus making the danger obvious or unusual. Some one of these conditions occurred in all of the following cases, and a recovery was allowed: *Neel v. King County, supra; Archibald v. Lincoln County,* 50 Wash. 55, 96 Pac. 831; *Einseidler v. Whitman County,* 22 Wash. 388, 60 Pac. 1122; *Blankenship v. King County,* 68 Wash. 84, 122 Pac. 616.

The duty of the county is discharged if it maintains its highways reasonably safe for ordinary travel. In *Dignan v. Spokane County,* 43 Wash. 419, 86 Pac. 649, the team became suddenly frightened and jumped forward, so that the wagon tongue fell. The team started to run, the tongue sliding to the ground, the tongue caught under a loose and warped board in a bridge, overturning the wagon and injuring the plaintiff. But for the loose and warped board, the accident would not have happened as it did. The court laid down the rule, and we think it applies to this case:

"To be reasonably safe for ordinary travel, a bridge does not have to be in such a condition that the tongue of a wagon dropped in front and pulled on to it front on, will slide over it without catching. If a bridge on a highway must be kept in that condition, then must all of the balance of the highway be kept in the same condition, as the bridge is of no more importance relatively than is the balance of the way, a burden, it is unnecessary to say, counties could not bear."

We realize that this case comes to us on demurrer, and that plaintiff has said in his complaint that the defect was a "steep precipice and sheer decline and pitfall of some eight or ten feet to the bottom thereof," and further that "the horse shied and lost his footing and fell down and into said declivity and precipice." If the bank was perpendicular or vertical, it seems to us that the plaintiff might have said so. The words he has used to describe the condition all bear a more favorable meaning, and if it had been possible for him to allege a condition requiring a barrier as a matter of law, we must assume that he would have done so. Declivity means a sloping bank. The words "steep" and "precipitous" do not imply or suggest that the bank was vertical, and the words "sheer decline" as employed here are contradictory of each other. We met a similar situation in the case of *Goldie-Klenert Distributing Co. v. Bothwell*, 67 Wash. 264, 121 Pac. 60, where we said:

"The circuitous method adopted by the pleader indicates an effort to avoid a direct averment of these facts rather than to plead them."

No unusual condition or obvious danger being pointed out in the pleadings, there can be no recovery, and the judgment of the lower court is affirmed.