[No. 30158. Department One. July 10, 1947.]

MARY OVERTON, *Individually and as Guardian ad Litem, Appellant,* v. WENATCHEE BEEBE ORCHARD COMPANY, *Respondent.*[1]

[1]Reported in 183 P. (2d) 473.

*Colvin & Williams* and *Sam R. Sumner,* for appellant.

*Skeel, McKelvy, Henke, Evenson & Uhlman* and *Altha P. Curry,* for respondent.

MILLARD, J.—Mary Overton, individually and as guardian *ad litem* of the minor son of decedent, brought this action to recover for the death of her daughter. The suit is on two causes of action. In the first, plaintiff sought damages on the ground that she was partially dependent upon her daughter; and in the second, as guardian *ad litem* of the minor son of her deceased daughter.

The cause was tried to the court, sitting with a jury. At the conclusion of plaintiff's case, defendant moved for dismissal of both causes of action. Motion as to the first

cause of action was granted and denied as to the second cause of action. At the close of the evidence, defendant's motion for a directed verdict was denied. The jury returned a verdict in favor of plaintiff; whereupon defendant moved for judgment notwithstanding the verdict and in the alternative for a new trial. Those motions were granted. The court gave the following reasons for granting the motions: (1) that there was no duty on the part of defendant to construct or maintain a guardrail on its bridge across the Columbia river that would be sufficiently strong to withstand the impact of decedent's automobile; (2) the bridge at the time of the accident was reasonably safe for the ordinary public travel to which it was subject; (3) the proximate cause of the accident was the negligent operation of decedent's automobile; (4) any presumption of due care on the part of decedent was overcome by evidence of her negligence; (5) the court improperly instructed the jury that the decedent was presumed to be exercising due care at the time of the accident.

From the judgment entered in favor of the defendant in both causes of action, plaintiff appealed. The facts are as follows:

Beryl A. Bidleman, then twenty-three years of age and employed in Seattle, left Seattle December 22, 1944, to spend Christmas with her parents and her three-year-old son, who lived on the Beebe orchard tract on the Douglas county side of the Columbia river across from the Chelan railroad station. Her father was an employee of that company.

On the trip to Wenatchee, she was accompanied in an automobile by one Austin Burton, a former college acquaintance, who was going to Wenatchee to spend the holidays with his parents. The two arrived in Wenatchee early in the evening of December 22, 1944, and partook of dinner with the parents of Mr. Burton. The young lady then continued the trip home alone, a distance of about thirty-five miles.

She returned the next evening, December 23rd, to the Burton home for a Christmas party in Wenatchee about

eight p. m. The Burtons endeavored to persuade her to stay overnight in Wenatchee and start home the next morning, but in this they were unsuccessful, and shortly after midnight she left Wenatchee to return to the home of her parents. From Wenatchee, she traveled north on state highway No. 10 on the west side of the Columbia river to Chelan and then to Chelan station to cross the Columbia river over the Beebe bridge, which connected the orchard tract where her parents resided and the public highway on the Douglas county side of the river to the Chelan county side of the river. She never arrived at her home.

About ten a. m. December 24th, she was found dead in her automobile, which, after traveling some three hundred eighty feet up the approach of the bridge on the Chelan county side, had broken through the guardrailing of the bridge and landed upside down on the ground forty-one feet below the floor of the bridge. This bridge was built about twenty-five years ago by respondent to give access from the orchard to Chelan Falls and other communities, and to convey an irrigation pipe to the property. There were no witnesses to the accident.

The bridge is a wooden structure, owned and maintained by respondent, and is known as a suspension bridge with trestle approach on the west side. The approach runs about five hundred feet to the span. It is made of three by twelve inch planking laid crosswise on the bridge with a lane of driveway made of two by twelve inch planks laid lengthwise, four of these planks being laid on each side of the center of the bridge deck. There is a space between the two sets of driveway planking and then a space on each side of the floor planking. Then four by four inch timbers running lengthwise of the bridge are spiked to the floor, and next to the four by four inch timber is a steel irrigation pipe fourteen inches in diameter.

On the outside of the steel pipe and on both sides of the bridge is the guardrail, which is approximately four and one-half feet high. This guardrail is constructed of four by four inch posts for the uprights, which are spaced ten

feet apart and are reinforced by two by four inch timbers placed at a forty-five degree angle, and three horizontal rails of two by four inch timbers and a top rail of two by six inch timber.

The bridge is a toll bridge, and a bridge tender is on duty during the day from seven-thirty a. m. to eight or eight-thirty p. m. Employees of respondent and their families and persons having business with respondent have the privilege of using the bridge without toll. The bridge is open to the public at night without payment of toll. There is a bridge house on the Chelan county, or west, entrance of the bridge, and a sign on the bridge house which reads as follows:

"SLOW
Toll Bridge, fee 50¢
Load limit, 5 Ton gross
One way traffic
15 miles per hr.
Cars 300 ft. apart."

There is a like sign at the Douglas county, or east, entrance, and the third sign on the turnout of the bridge itself.

The only evidence of what occurred is the car tracks caused by decedent's automobile on the frost. The bridge tender, who discovered the accident the morning of December 24th, immediately called a deputy sheriff and a state highway patrolman, who made an investigation. The deputy sheriff took measurements of marks on the irrigation pipe, and the state patrolman took measurements of tire marks and markings on the pipe. The state patrolman testified that the tire marks of decedent's automobile showed she left the two by twelve inch horizontal planking at a distance of three hundred fifty-seven feet from the bridge portal and traveled thirty-six feet off the planking at an angle to the south and toward the irrigation pipe, then climbed the four by four inch timber along the side of the pipe a couple of feet, went over the pipe and traveled along the pipe, scraping the pipe for a distance of eighteen feet, then the car turned to the right and south and plunged

over the side through the guardrail and fell to the ground below the bridge.

The other investigator testified there were three distinct markings on the pipe, the first at a place three hundred thirty-eight feet from the beginning of the bridge, then twenty-eight feet farther up on the pipe toward the Douglas county side was another tire mark, and twenty feet beyond was a dent in the pipe where the car went over the side of the bridge. There is no evidence of any skid marks. The pipe had fasteners or round bands with nuts on them which could be tightened. From the point where the wheels of the car first hit the pipe, to the place where it left the bridge, was from thirty-nine to forty-eight feet. Two sections of guardrail were torn from their place on the bridge at the point where the car went through the guardrail. The railing adjacent to the point where the automobile went through the guardrail was in bad condition; nails were loose in the ends of the boards, and the boards were warped. The boards had not been painted for many years.

It is appellant's theory that the failure of respondent to use ordinary or reasonable care in the construction and maintenance of guardrails on the bridge was the proximate cause of the death of the decedent, and that the requirement of ordinary care means the construction and maintenance of an adequate guardrail as well as other parts of the bridge that would afford protection commensurate with the danger involved.

Unquestionably, respondent's bridge is a part of the state highway, and it was the duty of respondent to maintain that bridge in a reasonably safe condition for ordinary traffic. The duty of respondent is no greater than that of a governmental agency in maintaining a public highway, and that duty is to maintain the highway in a reasonably safe condition for ordinary traffic. *Berglund v. Spokane County,* 4 Wn. (2d) 309, 103 P. (2d) 355.

Respondent is not an insurer of the personal safety of everyone who uses its bridge. It does not owe any duty to keep that bridge in such repair that accidents cannot possibly happen upon it. Its duty is the same as the duty

of a municipal corporation in the maintenance of its sidewalks; that is, its duty is done when it keeps the bridge reasonably safe for use—safe for those who use the bridge in the exercise of ordinary care. *Grass v. Seattle,* 100 Wash. 542, 171 Pac. 533.

 Respondent's duty to maintain a guardrail on its bridge was no greater than that of municipal corporations or counties on public highways. A municipal corporation may be chargeable with negligence in failure to maintain guardrails, barriers or warning signs if the situation along a highway is inherently dangerous or of such character as to mislead a traveler exercising reasonable care. *Barton v. King County,* 18 Wn. (2d) 573, 139 P. (2d) 1019.

In *Swain v. Spokane,* 94 Wash. 616, 162 Pac. 991, we held that, when the steering gear of plaintiff's automobile refused to work, and the car, driven at slow speed, crossed the curb and sidewalk and went through the low wooden railing of the bridge at the side of a street, the defendant municipal corporation was not liable for injuries sustained as a result of that accident; since the street was reasonably safe for ordinary travel, and there is no absolute duty to maintain railings in the absence of obvious danger, and the proximate cause of the accident was a defect in the automobile. See, also, *Leber v. King County,* 69 Wash. 134, 124 Pac. 397, 42 L. R. A. (N.S.) 267, where we held that a county was not required to maintain guardrails along a hillside county road, constructed fifteen feet wide and safe for ordinary travel, where there was no extraordinary condition or unusual hazard; therefore the county was not liable for injuries caused by want of a railing, through which a frightened horse shied and fell down a steep incline.

In *Tyler v. Pierce County,* 188 Wash. 229, 62 P. (2d) 32, we held that the county owed no duty to maintain barriers and post signs unless the situation is inherently dangerous and of such character as to mislead a traveler exercising reasonable care; which is not the case where the hazard was a common one of structural conditions at curves in a county road and not due to any obstruction or defect in

the surface of the road. In that case, which involved a right-hand turn, where a car went off the highway and skidded through the guardrail where the guardrail had been broken, we said:

"With respect to the second and third charges of negligence, this court has considered the obligation of municipalities to maintain barriers and post signs under varying circumstances. An analysis of the decisions will show that there is no such duty, unless (a) prescribed by law (*Lyle v. Fiorito,* 187 Wash. 537, 60 P. (2d) 709), or (b) the situation is inherently dangerous or of such a character as to mislead a traveler exercising reasonable care (*Neel v. King County,* 53 Wash. 490, 102 Pac. 396).

"The appellants apparently recognize the rule, but contend that this case falls within the latter exception to it. There are several decisions of this court in which the exception has been expressly or impliedly recognized and applied. But none of such cases bears a sufficiently close analogy in fact to the situation here presented to call for discussion.

"On the other hand, we think the facts in this case present a situation common to most of the highways in the state, and call for an application of the rule, rather than the exception to it."

Of course, where the facts warrant, the question whether a directional guardrail should be provided—whether the situation is inherently dangerous—may be one of fact for the jury. See *Simmons v. Cowlitz County,* 12 Wn. (2d) 84, 120 P. (2d) 479, which involved a soft shoulder on a turn which we found the public was invited to use.

Respondent's bridge was not constructed for pedestrian travel; hence, the question is restricted to the duty of respondent to provide a guardrail on the bridge sufficient to withstand the impact of an automobile. As stated above, the bridge was built for travel to respondent's orchard tract and to carry an irrigation pipe, which was of steel construction and fourteen inches in diameter. These pipes run along each side of the bridge and permit sufficient space in the middle of the bridge for one-way traffic. Four by four inch timbers are spiked on each side of the pipe. Respondent's duty of providing a highway reasonably safe for the ordi-

nary travel that would use the bridge was met. The pipe was a barrier which would have kept decedent's automobile in the pathway unless through some unusual circumstance it got out of control, which circumstance was present, in that the automobile was operated up over the four by four timber and over a fourteen inch steel pipe, through the rail and off the side of the bridge, making a marked dent in the pipe as the automobile went over.

In *Davison v. Snohomish County,* 149 Wash. 109, 270 Pac. 422, we held that, where less protection was afforded to the motorist than in the case at bar, there was no duty to provide guardrail sufficiently strong to withstand the impact of the automobile. Plaintiff claimed negligence in that case because of failure of the county to provide a guardrail of sufficient strength to hold the vehicle, in permitting a decayed rail to exist, and in allowing the bridge to exist with a particular slope which was claimed to be dangerous, and in permitting the bridge to become slippery. We held that there was no negligence on the part of the county in any of these particulars and directed dismissal of the action. We said:

"In the southwesterly approach to this bridge, there is a right angle turn towards the south, just easterly of the slough, and at this point the causeway or approach to the bridge is at quite an elevation above the ground level. The bridge itself is approximately eighteen feet wide; the approach, leading to the bridge proper, at the curve just to the east of the bridge, increases in width to a maximum of 30.9 feet, narrowing again to eighteen feet at the end of the turn.

"At about eight o'clock in the evening of November 11, 1926, plaintiffs were driving their Ford automobile toward the city of Snohomish and proceeded to cross the bridge from west to east at a low rate of speed. Plaintiff Edwin F. Davison was driving, and as the car rounded the curve to the east of the slough, he lost control, the car skidded, struck the railing on the east, or outer, edge of the approach just around the curve, broke through the railing and, with plaintiffs, fell to the ground. . . .

"The use of the automobile as a means of transportation of passengers and freight has, during recent years, caused

certain changes in the law governing the liability of municipalities in respect to the protection of their roads by railings or guards. A few years ago, when people traveled either on foot or by horse-drawn vehicles, a guard rail could, to a considerable extent, actually prevent pedestrians or animals drawing vehicles from accidentally leaving the roadbed; but, as a practical proposition, municipalities cannot be required to protect long stretches of roadway with railings or guards capable of preventing an automobile, moving at a rapid rate, from leaving the road if the car be in any way deflected from the roadway proper and propelled against the railing. As was said by this court in the case of *Leber v. King County,* 69 Wash. 134, 124 Pac. 397, 42 L. R. A. (N.S.) 267:

" 'Roads must be built and traveled, and to hold that the public cannot open their highways until they are prepared to fence their roads with barriers strong enough to hold a team and wagon when coming in violent contact with them, the condition being the ordinary condition of the country, would be to put a burden upon the public that it could not bear. It would prohibit the building of new roads and tend to the financial ruin of the counties undertaking to maintain the old ones.'

"This principle applies with special force to elevated causeways constructed of wood, such as the approach from which respondent's automobile fell, as upon such a structure the railing can be anchored or secured only to the deck of the causeway. Upon the ground, in situations of special danger, strength can be given to a guard or railing by driving posts into the earth and a guard of any desired strength can be constructed in that manner; a concrete viaduct can be constructed with side walls of considerable resisting power; but the same degree of protection cannot be expected from a guard or railing along the side of an elevated frame causeway or viaduct. Respondents introduced some testimony to the effect that the posts which supported the railing were, to some extent, rotted. We have carefully considered this testimony, and for the purposes of this opinion assume that it was true; but we still do not think that it was sufficient to take the case to the jury upon the question of appellant's negligence in connection with the condition of the railing at the time of the accident."

The rule followed in the foregoing cited case, which was decided in 1928, is applicable to conditions today. While automobiles may be capable of higher speed today than

then, the principle involved is the same. The opinion in *Davison v. Snohomish County, supra,* is in harmony with the weight of authority today. There was no duty on the part of respondent to anticipate decedent's automobile getting out of control. In *Roberts v. Eaton,* 238 N. Y. 420, 144 N. E. 667, 36 A. L. R. 411, judgment in favor of plaintiff was reversed on appeal. In that case, the operator endeavored to get his automobile out of some ruts in the road. The automobile skidded on some grass, snow, and ice on the side of the road and went over the bank. The court held there was no duty on the part of the town of Eaton to construct and maintain along the side of a highway adjacent to a declivity a barrier strong enough to prevent a heavy automobile from going through the barrier in case such automobile got out of the traveled way and struck the barrier; that is, the defendant was not bound to exercise extraordinary care to guard against unusual accidents. See annotation 36 A. L. R. 413, 416.

In *Gerrie v. Port Huron,* 226 Mich. 630, 198 N. W. 236, the court held that failure to maintain a barrier to a bridge strong enough to withstand the impact of an automobile was not negligence and quoted with approval Babbit, Law of Motor Vehicles (3d ed.), § 414, that,

"It is the general rule that the municipality is not bound to maintain a barrier which will stop a motor vehicle as, on account of the great weight and usual speed of motor vehicles to-day such a requirement would be manifestly absurd."

*Watkins' Adm'r v. Catlettsburg,* 243 Ky. 197, 47 S. W. (2d) 1032, is an apt authority. In that case, the court of appeals of Kentucky applied the rule that, where the condition is obvious and the elements of concealment of danger or notice thereof are not involved:

"There is no duty to maintain a barrier of sufficient strength to resist the force of an automobile or to prevent it from going over an embankment alongside the highway, even though at a curve, presenting a hazardous condition.

" . . . there was no duty on the part of the city of Catlettsburg, under the conditions presented in this case, to have maintained a guard or barrier. To have prevented

the car going over the embankment into the river in this case would have required a wall of sufficient strength to withstand the force of the moving automobile and to have wrecked it. There was no duty to maintain such an obstruction."

Although nails were loose in the boards of which the guardrail was constructed and some of the boards were warped, we find no evidence from which it may be even reasonably inferred that the automobile of the decedent would even have been slowed in its plunge through the side of the bridge; at the most, that is a mere scintilla of evidence and not sufficient to support a verdict. The condition of the railing was not a proximate cause of the accident. However strong the railing may have been, the accident would have happened. Whether the accident would have been more serious or less serious had decedent run into a barrier which would have withstood the impact of her automobile, is mere conjecture; and a verdict or finding may not be based upon conjecture. *Teater v. Seattle,* 10 Wash. 327, 38 Pac. 1006. See, also, *Cozzi v. Hooksett,* 84 N. H. 530, 153 Atl. 317, 155 Atl. 41.

The following language from *McCracken v. Curwensville Borough,* 309 Pa. 98, 163 Atl. 217, 86 A. L. R. 1379, is apposite:

"Even if the guard rails of the bridge had been adequate to prevent the car from going into the water below, it is by no means certain that plaintiff's husband would not have been fatally injured by crashing into them, as persons often are fatally injured by crashing into immovable objects."

In the case cited, it was held that the proximate cause of injury to the operator of the automobile was the icy condition of the highway and not the defective condition of the guardrail. In the A. L. R. annotations to that case will be found a list of cases subscribing to the rule followed by the majority of the courts to the effect that there is no duty to maintain a barrier, under circumstances like those in the case at bar, which will stop a motor vehicle and resist its force sufficiently to prevent it from going over an embankment or over a bridge. The rule is in harmony

with the rule followed by this court in *Davison v. Snohomish County, supra.*

In this case, appellant invokes the presumption that the decedent used due care, since there is no evidence to the contrary. Appellant still fails to make a *prima facie* case, because she is unable to establish the negligence of respondent as a proximate cause of the death of Mrs. Bidleman by relying upon that presumption. This presumption only goes to the question of freedom from contributory negligence and may not be used to supply the need of proof of causal connection between negligence of respondent and the injury and death of the decedent. *Gardner v. Seymour,* 27 Wn. (2d) 802, 180 P. (2d) 564. We stated in the case cited that the rule followed by a minority of courts, that the presumption of due care can be used as evidence to supply the need of proof of causal connection between the negligence of a defendant and the death of a decedent, we refused to follow.

The physical facts disclose that the decedent's car traveled forty-eight to fifty-four feet from the time she left the regular path provided for automobiles until she went through the guardrail. There were no skid marks, but the light frost on the planking distinctly showed the marks of the tires of her automobile. The conclusion is inescapable that the automobile was operated at a high rate of speed. It scraped along the top of the iron pipe for a distance of eighteen feet before plunging through the guardrail. The decedent was familiar with the bridge, had traveled over it a number of times, and must have seen the signs on the bridge warning the traveler not to travel in excess of a speed of fifteen miles per hour. Her automobile was traveling in excess of that speed.

The trial court correctly applied the rule followed in *Morris v. Chicago, M. St. P. & P. R. Co.,* 1 Wn. (2d) 587, 97 P. (2d) 119, 100 P. (2d) 19, to the effect that the presumption of due care on the part of the decedent should not be submitted to the jury where, from all the evidence, the court could say, as it can under the evidence in the case at bar, that the minds of reasonable persons would not

differ that the driver was negligent at the time of the accident. See *Erickson v. Barnes*, 6 Wn. (2d) 251, 107 P. (2d) 348; *Portland-Seattle Auto Freight v. Jones*, 15 Wn. (2d) 603, 131 P. (2d) 736.

It is unnecessary to discuss the erroneous instruction No. 3.

There is no evidence that respondent was guilty of negligence that proximately caused the accident. We agree with counsel for respondent that respondent owed no duty of care to the decedent to provide a guardrail of strength sufficient to withstand the weight of an automobile driven so rapidly, and in excess of the legal rate of speed, as to resist the obstruction of a four by four inch timber, then a fourteen inch pipe, and after riding that pipe for approximately eighteen feet, plunge completely over that pipe through the railing and off the bridge. There was no duty on the part of respondent to foresee and provide against such accident. The court correctly granted the motion for judgment notwithstanding the verdict.

The judgment is affirmed.

MALLERY, C. J., SIMPSON, ROBINSON, and ABEL, JJ., concur.