[No. 34023. Department One. November 7, 1957.]

BEULAH ULVE, *as Executrix, Respondent*, v. THE CITY OF
RAYMOND, *Appellant.*[1]

[1]Reported in 317 P. (2d) 908.

*Lester T. Parker* and *Kenneth W. Hill,* for appellant.

*Kennett, McCutcheon & Soderland, James E. Duree,* and *Hiram E. Washburn,* for respondent.

WEAVER, J.—A jury returned a verdict for defendant, the city of Raymond. The city appeals from an order granting plaintiff a new trial.

The order granting a new trial amply states the reasons therefor, as required by the rule of court. Superior Court Rule 16, 34A Wn. (2d) 117, as amended, effective July 1, 1954. The reasons set forth by the trial judge may be placed in two categories: The first, that three instructions given were erroneous statements of law; hence, misleading. The second, that substantial justice had not been done because of three situations that arose during trial.

In brief, the basic facts, which we must consider at this point of the opinion, are these:

First and Third streets in the city of Raymond are parallel and extend north and south. Alder street, which parallels the south fork of the Willapa river, intersects First and Third streets just north of the river. Third street bridges the river; First street extends south of Alder street to a dock on the north bank of the river. The driver of an automobile, who proceeds south on First street and desires to cross the river, must turn left on Alder, proceed two blocks to the intersection of Alder and Third streets at the bridge, and then turn right in order to cross the bridge.

February 16, 1952, Mr. Ulve, plaintiff's husband, left the vicinity of Lacey, Washington, to drive to Astoria, Oregon. He telephoned his wife from Raymond about eleven p. m. The call was not completed, because he did not have the proper change for the pay telephone, but his wife heard his conversation with the telephone operator and recognized his voice.

Mr. Ulve's body and automobile were recovered from the waters of the south fork of the Willapa river, just off the dock at the end of First street in Raymond, on February 18, 1952.

In general, respondent's case rests upon the proposition that appellant city created and maintained an inherently dangerous condition, consisting of the unmarked intersection, the approach and dock leading to the river, which approximately caused the death of Mr. Ulve.

The city's first assignment of error is directed to the following, which appears in the order granting a new trial:

"Instruction No. 18 contained an erroneous standard for testing the conduct of the decedent and a standard contrary to that set forth in Instruction No. 19, which in fact contained the appropriate and proper standard. Instruction No. 18 was further erroneous in that it was argumentative and subject to being construed by the jury to be a comment on the evidence by the court."

Instruction No. 18, to which the trial court directed the above criticism, reads as follows:

"Instruction 18. You are instructed that fog is one of the most dangerous conditions that beset the driver of a motor vehicle. One driving through fog must *exercise a very high degree of care.* Fog is not a latent or concealed danger. It gives ample notice of its presence. The driver of an automobile proceeding through fog must note all matters which must be considered from the standpoint of the maintenance of due regard for his own safety and that of others. *If you find from a fair preponderance of the evidence* in this case *that the deceased,* Gearold B. Ulve, *was driving his automobile at the time of the accident, when the visibility was impaired by fog conditions, then it was his duty to exercise a very high degree of care for his own safety. And if you find from a fair preponderance of the evidence that he failed to exercise such high degree of care and that such failure was the proximate cause of his death, then the plaintiff herein cannot recover* and your verdict must be for the defendant." (Italics ours.)

This court has never repudiated the doctrine that the degree of care required is that degree which a reasonably prudent person would have exercised under the same or similar circumstances. *Ewer v. Johnson,* 44 Wn. (2d) 746, 757, 270 P. (2d) 813 (1954).

"The prevailing view is that there are no 'degrees' of care or negligence, as a matter of law; there are only different amounts of care as a matter of fact; and 'gross' negligence is merely the same thing as ordinary negligence, 'with the addition,' as Baron Rolfe once put it, 'of a vituperative epithet.'" Prosser, Law of Torts (2d ed.) 149.

Of course, what would be reasonable or ordinary care under one set of facts might not be reasonable or ordinary care under another set of facts. The difference would not be the degree of care used, *but rather the amount of*

*care. Morehouse v. Everett,* 141 Wash. 399, 252 Pac. 157, 58 A. L. R. 1482 (1926). As the danger becomes greater, the actor is required to exercise caution commensurate with it. It is self-evident and inherent from the experience of everyone, that the *amount* of care that must be exercised is dependent upon the facts of the situation; but the *degree* of care does not change. "The standard of care is the same. The test is the same." *Ewer v. Johnson, supra.*

Professor Prosser illustrates it thus:

"It is sometimes said that a blind man must use a greater degree of care than one who can see, but this means nothing more than that he must take the precautions the ordinary reasonable man would take *if he were blind.*" Prosser, Law of Torts (2d ed.) 126. (Italics ours.)

In short, the amount of care exercised must be commensurate with the circumstances.

If the trial judge is compelled, by the circumstances of the case before him, to instruct upon the *amount* of care which must be exercised under the circumstances, the path appears to be both narrow and ill-defined. On the one hand is the pitfall of commenting on the evidence; on the other, of emasculating the rule.

This court, at different times, has treated such a situation in several ways—all without changing the basic rule.

In *Hubbard v. Embassy Theatre Corp.,* 196 Wash. 155, 82 P. (2d) 153 (1938) (a case which reviews many prior decisions), the court held that an instruction that required plaintiff "to exercise a greater degree of diligence" was erroneous and prejudicial because it conflicted with the "prudent man" rule. In *Ewer v. Johnson, supra,* the trial judge instructed that one driving an automobile into a cloud of dust "must exercise a very high degree of care." This court designated the instruction as mere advice to the jury

". . . as to the *amount* of care which a careful and prudent person should exercise in entering a dust cloud . . ." (Italics ours.)

and determined that the jury was not misled nor the basic rule violated.

■ There is also a third possibility. We have held on numerous occasions that the presumption of prejudice arising from an erroneous instruction may be overcome if the instructions, when all of them are considered, reveal that the jury has not been misled nor confused by the erroneous instruction.

■ The trial judge rejected the third possibility and held that the *rationale* of *Ewer v. Johnson, supra,* did not apply. In this we believe he was correct. The italicized portion of instruction No. 18, *supra,* is not an introductory statement; nor is it explanatory of the *amount* of care required by the circumstances. The instruction "contains an erroneous standard for testing the conduct of the decedent." It does not complement the correct rule which is stated in a subsequent instruction. It is in conflict with it; hence, confusing to the jury. The city's first assignment of error is not well taken.

In granting the new trial, the court concluded that instruction No. 23 was prejudicially erroneous. It reads as follows:

"Instruction No. 23. You are instructed that on the question of speed, you may consider the force and violence of the impact [*] and the length of the skid marks, if any, made by the decedent's automobile as he approached the end of the city dock, and the distance said automobile traveled off the end of the dock."

The trial judge said:

"I just took it for granted that 'if any' implied [applied] to both the impact and the skidmarks, but I can see where a jury might read it that they can consider the force and violence of the impact. In other words, I am telling them that took place; whereas, if I had included in there [at the asterisk above] the words 'if any,' that might have removed the vice of that particular instruction."

Were this the sole reason for granting a new trial, we would be inclined to disagree with the trial judge. The jurors were instructed that they are the sole and exclusive judges of the evidence; that the court is not permitted to comment on the evidence and "it has not intentionally done

so"; and that if it appears to the jury that the court has commented on the evidence, it "shall disregard such comment entirely."

It is difficult for us to conclude that the instruction was prejudicial—for the reason given by the trial court. However, if the instruction be appropriate upon a retrial of the case (which will be discussed later), the trial court's criticism of it can easily be remedied.

The respondent urges that instruction No. 23 (quoted *supra*) and instruction No. 27 should not have been given, because there is no evidence to justify the submission of the issues covered by said instructions.

A railroad track lies between, and parallel to, Alder street and the river. It crosses First street at approximately a right angle, a short distance south of the intersection of First and Alder. A railroad crossing sign and a stop sign were located on the west side of First street, forty-one feet south of the center of the intersection and eighteen feet west of the center line of First street.

Instruction No. 27 told the jury that it was decedent's duty to bring his vehicle to a stop before proceeding south from the intersection; that failure to do so would be negligence, unless, under the circumstances, he was justified or excused in failing to see the stop sign. "The burden is on the plaintiff to show justification or excuse for failure to so stop."

There are no eyewitnesses to the accident. The record is devoid of any proof of decedent's conduct at the time he crossed the railroad track. He may have stopped; he may not have stopped. The instruction permitted the jury to speculate. Instruction No. 27 is not justified by the record and should not have been given.

We need not consider the three situations from which the trial judge concluded that substantial justice had not been done. Either they will not arise during a retrial, or, if they do, they can be decided by the trial judge at that time.

By reason of Rule on Appeal 16, 34A Wn. (2d) 23, as amended, effective January 3, 1955, the respondent argues that it was error for the trial court to submit instructions

dealing with speed and contributory negligence of the decedent. If the speed of decedent's car can be determined, it can be determined only by a consideration of physical facts, since no one saw the accident.

In *Bellantonio v. Warner,* 47 Wn. (2d) 550, 553, 288 P. (2d) 459 (1955), this court quoted with approval from *Adkisson v. Seattle,* 42 Wn. (2d) 676, 691, 258 P. (2d) 461 (1953), as follows:

" 'Trial courts should be hesitant in submitting to the jury the question of the rate of speed merely from a consideration of the physical facts alone. . . . If the trial judge, in the exercise of his discretion, feels that the jury could arrive at a decision (as distinguished from a mere guess or speculation) as to the rate of speed by a consideration of the physical facts, such as the amount of physical damage done, the distance a car travels after the impact, etc., then he should submit such issue to the jury.' "

In the *Adkisson* case, we held that the trial court properly submitted the question of the rate of speed to the jury, based upon the physical facts surrounding the accident. In the *Bellantonio* case, we held that the court did not abuse its discretion when it refused to submit such an issue to the jury.

Since there are no eyewitnesses to the accident, what, then, are the physical facts which might indicate the speed of decedent's car?

There is conflicting testimony that the morning after the accident skid or tire marks, of an even color of black, were observed on the gravel approach to the dock and across approximately sixty feet of the dock. There is also a conflict in the evidence as to the distance decedent's car was found from the south end of the dock. It is admitted that there was fog, that the visibility was poor the night of the accident. The next morning, the planks of the dock were frosty, wet, and slippery.

Next, there is the fact that a section of a six-by-twelve-inch guard rail, which rested on two-inch blocks and was bolted to the south end of the dock in the path of vehicular traffic, was broken off. The broken guard rail had consider-

able dry rot, especially around the bolts. A portion of the broken guard rail and one of the three-quarter-inch bolts which fastened it to the dock are in evidence. There is expert testimony of reaction times and stopping distances computed at various speeds on different surfaces that existed between the intersection on First street and the south end of the dock. With these circumstances, we do not believe the trial court abused its discretion when it presented the issue of the rate of decedent's speed to the jury by instructions No. 21 and No. 23, quoted *supra*.

■ Since the question of decedent's speed was properly given to the jury, it follows that the city was entitled to instructions on contributory negligence.

■■ While it is true that it is within the discretion of the trial court to determine how many instructions should be given regarding each litigant's theory of the case (*Cantrill v. American Mail Line, Ltd.*, 42 Wn. (2d) 590, 599, 257 P. (2d) 179 (1953)), we find merit in respondent's contention that the fourteen instructions that treat specifically with contributory negligence result in an overemphasis of the city's theory of the case; especially since the only evidence in the record of decedent's conduct within the city of Raymond (except for the telephone call and the ultimate fact that his body was found in the river at the end of the dock) is found in those physical facts which we have outlined as considerations in the determination of speed.

■ To set forth the fourteen criticized instructions would serve no useful purpose and would unduly extend this opinion; besides, it is not the province of this court to write the instructions for a retrial of the case.

Although the city is entitled, upon the record before us, to have the question of decedent's possible contributory negligence considered by the jury, we conclude that the fourteen instructions which treat with contributory negligence place undue emphasis on the city's theory of the case. Upon the retrial, the issue may be submitted to the jury in a manner consistent with the thought expressed herein.

■ Instruction No. 2 is an analysis of the affirmative defenses *pleaded* by the city and follows an analysis of the allegations of respondent's pleadings. Instruction No. 3 correctly informed the jury that the allegations of the pleadings were not evidence and were not to be considered as such. Instruction No. 2 was not erroneous.

There are no signs or directional devices at the intersection of First and Alder. As we have mentioned heretofore, a railroad crossing sign and a stop sign are located on the west side of First street, forty-one feet south of the center of the intersection and eighteen feet west of the center line of First street. The stop sign, which is attached to the railroad crossing sign, is octagonal, twenty-four inches wide and high. It is ringed with three-quarter-inch clear glass reflectors. The word "STOP" (letters six inches high) is in red-glass reflectors. Above and below the word "STOP" are the words "City" and "Dock" (both in black letters three inches high).

One witness testified, concerning the sign:

"Well, you can see it in the daytime but at night it is doubtful if you would notice it."

■ In *Bradshaw v. Seattle*, 43 Wn. (2d) 766, 775, 264 P. (2d) 265, 42 A. L. R. (2d) 800 (1953), this court said:

"The rule is well established that a municipality is not negligent in failing to erect and maintain warning signs or barriers unless (a) the situation is inherently dangerous, *Neel v. King County*, 53 Wash. 490, 102 Pac. 396, or (b) such signs or barriers are specifically required by statute. [Citing cases.]

"In the absence of an express statute, a municipality cannot be held liable for failure to erect warning signs or barriers to apprise travelers of extraordinary or unusual conditions unless the danger existed in the highway itself. [Citing cases.]"

■ There is evidence in the record, which, if believed by the jury, would support the conclusion that the intersection, the lack of signs, and the dock, together with fog and

poor visibility, constitute an inherently dangerous and unusual condition.

In such a situation, the law requires that the city use that degree of care in the installation of signs or other devices that reasonably prudent men would use under the same or similar circumstances; that the city have, procure, and install such signs or devices as the experience of reasonably prudent men so engaged may show to be reasonably safe for the purposes for which they are used, in view of all the conditions and circumstances connected with the situation and of the dangers to be reasonably apprehended therefrom. See *Barber v. Seattle*, 182 Wash. 672, 676, 48 P. (2d) 234 (1935).

Instruction No. 26 reads as follows:

"You are instructed that there was no duty on the part of the defendant, City of Raymond, to erect warning signs that would be clearly visible under all atmospheric conditions, such as conditions of heavy fog. It was the duty of the city to use ordinary care in that regard."

Instruction No. 26 does not state the law applicable to the circumstances and should not have been given as quoted *supra*.

We find no error in instruction No. 22; hence, we do not set it forth.

The following sentence should be stricken from instruction No. 24:

"A city may have exercised all the care which the law requires and yet in the light of new experience, after an unexpected accident has occurred and as a measure of extra caution, it may adopt additional safeguards."

The jury may well have believed that the court was designating Mr. Ulve's death as an "unexpected accident." It certainly was not a "new experience" for the city, for the record discloses that others had driven off or narrowly missed driving from the dock prior to Mr. Ulve's death.

We find no error in the court's refusal to give respondent's requested instructions Nos. 10 and 18. The subject matter of requested instruction No. 10 is covered substantially by other instructions. Requested instruction

No. 18—which respondent designates as "the standard instruction on emergency"—is not justified by the record before us. It would permit the jury to speculate whether Mr. Ulve appreciated at any time that he was in a position of peril and was required to make a choice. The record is silent.

 The trial court did not err when it refused to permit a witness, who testified he had been acquainted with First street since 1930, to answer a question *of whether a stranger*, driving south on First street toward Alder on a foggy night and exercising due care for his own safety, would reasonably believe that he was on a through street.

It is a basic rule of evidence that a nonexpert witness, when testifying, must state facts and not his opinion or conclusion. To this rule there are certain limited exceptions permitting a nonexpert witness to give to the jury his opinion or conclusion. Under one such exception, if the subject matter of the testimony cannot be reproduced and described to the jury precisely as it appeared to the witness, a witness who has had means of personal observation may state his opinion, conclusion, and impression formed from such facts and circumstances *as came under his observation. Sears v. Seattle Consolidated Street R. Co.*, 6 Wash. 227, 230, 33 Pac. 389 (1893); *State v. Chemeres*, 20 Wn. (2d) 712, 714, 147 P. (2d) 815 (1944).

While this exception allows a witness to testify as to *his* impression, it does not qualify nor permit him to testify as to the impression identical facts would have upon a person *other than himself. Fort Worth v. Lee*, (C. C. A. Texas) 182 S. W. (2d) 831, 839 (1944).

We find no error in the other matters which respondent urges.

The order granting a new trial is affirmed.

HILL, C. J., and MALLERY, J., concur.

FINLEY, J. (concurring specially in the result)—I concur in the result and agree substantially with the reasons therefor as stated in the majority opinion. However, I feel

compelled to register disagreement with the majority's discussion of the purported linguistic difference, or the legal distinction, between the phrases *degree of care* and *amount of care*. I fully recognize and appreciate the fact that numerous judicial decisions, as well as Prosser and other legal authorities, attempt to distinguish between the aforementioned phrases in connection with their use in jury instructions.

The decisions of this court in *Hubbard v. Embassy Theatre Corp.*, 196 Wash. 155, 82 P. (2d) 153, and in *Ewer v. Johnson*, 44 Wn. (2d) 746, 270 P. (2d) 813, certainly recognize and attempt to clarify orthodox, legalistic reasoning in this area of negligence law. In other words, I must concede that there is subtle legal dogma supporting the distinction, which the majority accord to the two phrases. On the other hand, it seems to me that the semantic difference between the two phrases is indeed slight—especially in the minds of laymen, and it is laymen who make up the juries.

Referring to the matter under discussion, Steinert, J., in his dissent in the *Hubbard* case, *supra*, commented:

"It is sufficient to say that it would require more than ordinary perceptive powers by anyone not skilled in legal phraseology to assign any difference of meaning between the two words as applied to a case of negligence. I do not believe that it would occur, even to a lawyer, that there was any distinction, unless his wit had been sharpened by previous experience."

Judicial emphasis relative to the dubious legal distinction between the two phrases unquestionably can be confusing and misleading to non-legally-conditioned lay minds in jury cases. Past judicial recognition appears to me to be no justification for perpetuating this purely conceptual device which increases rather than diminishes the difficulties and defects in the operations of the machinery of justice.

I agree with the comment in the majority opinion that

"If the trial judge is compelled, by the circumstances of the case before him, to instruct upon the *amount* of care which must be exercised under the circumstances, the path

appears to be both narrow and ill-defined. On the one hand is the pitfall of commenting on the evidence; on the other, of emasculating the rule."

I am convinced that references by a trial judge to either of the dubious phrases in an instruction to a jury would tend to change and to distort rather than clarify and explain the basically simple requirement of the law: that a person exercise such care as a reasonably prudent or ordinarily prudent man would exercise under the circumstances. Certainly it appears to me that an effort by a trial court to distinguish the phrases in terms of what was said in *Hubbard v. Embassy Theatre Corp., supra*, or in *Ewer v. Johnson, supra*, would be confusing generally to lay minds, and thus to most jurors. Of course, in some areas—*e.g.*, the passenger-carrier relationship—the law requires more than ordinary care, and instructions necessarily must be tailored accordingly.

I believe it would be fair to both parties litigant, and certainly more understandable to jurors, if instructions in the areas of the law in which ordinary care is required did not go beyond a simple general statement of the basic requirement of the law: that a person is required to exercise such care as a reasonably prudent or ordinarily prudent man would exercise under the circumstances.

In connection with the foregoing comments, it appears to me that, if the evidence in particular cases indicates circumstances which counsel regard as noteworthy, these may be called to the attention of the jury and emphasized by counsel in closing arguments.

OTT, J., concurs with FINLEY, J.