[No. 19793.   Department One.   August 14, 1926.]

JENNIE GRAY, as *Administratrix of the Estate of Edna Kersthner, Respondent,* v. KING COUNTY, *Appellant.*[1]

[1] COUNTIES (58)—TORTS—PUBLIC IMPROVEMENTS—WHARVES—LIA-
BILITY.   A county maintaining a wharf at the end of a county
road as an approach to a ferry is bound to use the reasonable
care required in the maintenance of a public place.

[2] HIGHWAYS (62, 66)—INJURIES FROM DEFECTS—LIABILITY OF
COUNTY.   A county's maintenance of a wharf at the end of a
county road as an approach to a ferry is negligence where there
were no signs indicating that the road led to a wharf and no
lights, gates or guards indicating the danger or preventing run-
ning off the wharf into the lake.

[3] WHARVES (7)—NEGLIGENT CONSTRUCTION—LIABILITY OF COUNTY.
Rem. Comp. Stat., § 9616, providing what shall be sufficient
guards or railings on the edge of wharves, has reference to the
prerequisites for a permit to maintain a private wharf, and was
not intended to prescribe the safety requirements of a public
wharf, maintained at the end of a county road as an approach to
a ferry; and hence does not relieve the county of negligence in
failing to maintain gates, guards or notice as to the danger of
driving off the wharf.

Appeal from a judgment of the superior court for
King county, Huneke, J., entered June 4, 1925, upon
findings in favor of the plaintiff, in an action for wrong-
ful death, tried to the court.   Affirmed.

*Ewing D. Colvin, Howard A. Hanson,* and *Stanley
Kent,* for appellant.

*Milo J. Loveless* (*E. W. Schwellenbach,* of counsel),
for respondent.

BRIDGES, J.—There is a paved highway leading from
the town of Renton northerly to the town of Kirkland
and beyond, in King county.   This road is on the east-

[1]Reported in 248 Pac. 397.

erly side of Lake Washington, but for the most part some distance therefrom. At a point not very far out of Renton, is a good gravel road leading off the main paved highway and going westerly to the lake. At the intersection of these two roads, there is a sign which indicates that the gravel road leads to "Newport." At the lake end of this road, the county, which is the appellant in this action, several years ago, constructed, and ever since has operated, a wharf, along which ferries and other vessels navigating the lake may berth. Newport, the name on the sign, was apparently the name of the wharf. The distance by the gravel road from the main highway to the wharf is in the neighborhood of 1,800 feet. The wharf is about forty feet square, and there is a trestle approach thereto about three hundred seventy-five feet in length. The trestle is planked and has a guard rail on either side. The wharf proper has around its outer edge a sill ten inches square, except at a point immediately in front of the approach. That space is entirely unguarded. On the lefthand side, and immediately adjoining the lake end of the approach, is a small waiting room.

At about ten o'clock of the night of February 28, 1924, two young ladies, Edna Gray and Miss Abernathy, were riding with one Hancock in his Ford coupe. The man was driving, and the young ladies were sitting at his righthand side on the front seat. The night was clear, but dark. The lights and brakes on the car were in good order. Hancock was an experienced driver. The three parties were taking a pleasure ride. They were going north on the paved highway heretofore mentioned. When they reached the gravel road previously described, they stopped, and after some discussion as to their locality, they saw the sign which we have mentioned, and followed the road leading to "Newport." They were each acquainted with the

paved highway and knew that it followed along the easterly side of the lake, but none of them had ever before been on the Newport gravel road; nor did any of them know that there was a wharf at the lake end of that road. They drove along in the ordinary way, until they reached the end of the trestle leading onto the wharf, where the car was put in low gear because of loose gravel. Going thence onto the planked approach, the car was again speeded up to fifteen or twenty miles an hour.

All the parties in the car knew that they were on a trestle, but supposed it was a part of the road. The driver did not realize that he was coming to the end of the road and onto the wharf, until he was about opposite the small waiting room heretofore mentioned. He then, for the first time, realized the danger and did his utmost to stop the car, but was unable so to do, and it plunged off the wharf into the waters of the lake at the point where there was no guard rail or sill. Edna Gray was drowned, and this suit was brought on account thereof. The case was tried by the court.

There is much argument in the briefs as to whether the wharf was a continuation of the road, and, therefore, whether the law of the road is applicable to the wharf. We think that question is largely academic in this suit.

[1] The county having built, maintained and operated the wharf, was bound to use such care as would keep it in a reasonably safe condition for those who might go upon it. There is authority to the effect that the county was bound to use the same degree of care in the maintenance and operation of the wharf as with reference to its roads. 40 Cyc. 917 *et seq.; Oceanic Steam Navigation Co. v. Compania Transatlantica Espanola,* 134 N. Y. 461, 30 Am. St. 685; *Gregg v. King County,* 80 Wash. 196, 141 Pac. 340, Ann. Cas. 1916C

135. But it is not necessary for us to so hold in this case. The wharf was a public place, and, if it is to be considered a thing entirely separate from the road in its maintenance and operation, the county was bound to use reasonable care under all the circumstances.

[2] But the county contends that, if the rule be as we have stated it, it complied therewith, and that it did use reasonable care when the purposes and uses of the wharf are taken into consideration. We think not. It built and had control over the road as well as the wharf. There were no signs anywhere to indicate that the road led to a wharf. There were no lights, no gates, no guards, no signs nor other device to indicate that danger was at hand. Appellant argues that there are in the state of Washington many wharves such as this, and that there is no way of making them safer than this one was without interfering with the uses and purposes for which they were built and are maintained. But we think that the county might well have done something to inform the traveler of the danger before him. It is not within our province to determine in advance, whether reasonable care imposed upon the county the duty to keep a watchman, or a closed gate, or lights, or a red light indicating danger, or signs which would show to the traveler on the road that he was approaching a wharf, or a sill around the entire wharf, or some other protection or warning. It did none of these things. Without some warning or protection, the place was a dangerous one. The dangers could have been greatly decreased by the use of warnings or devices which would not materially have interfered with the use of the wharf.

· We therefore conclude that the trial court was right in finding that the county was guilty of negligence.

The parties have cited but one case which is at all parallel to this one, and our search for others has not

been successful. In the very recent case of *Willis v. City of Newbern,* 132 S. E. (N. C.) 286, the facts were very similar to those here. There the court found that the city was guilty of negligence. Apparently, it made substantially the same argument that is here made by the county, for the court said:

"The defendant contends that, as the terminus of this street was a public dock or wharf, it would greatly interfere with commerce to have the same blocked with any sort of barrier or device to give warning to travelers. It is undoubtedly the mandate of sound public policy to encourage commerce and to lend to its legitimate expansion the full power of the law, but it is also true that the sanctity of commerce must yield to the sanctity of life."

But it is argued by appellant that there can be no recovery here, because the two young ladies and the driver of the car were on a joint adventure, to wit, a pleasure trip, and that negligence of the driver would be imputed to the guests in the car. It is not necessary for us to determine whether, under proper circumstances, the negligence of the driver would be imputed to the passengers, for the reason that we do not find that the driver was guilty of negligence.

[3] The appellant further contends that a county cannot be sued, except by legislative permission, and that the legislature has a right to determine what shall constitute negligence on its part, and that, in this instance, it has so legislated. In support of this argument it cites Rem. Comp. Stat., § 9616 [P. C. § 7271], which reads as follows:

"All wharves now standing, or hereafter to be built, in this state, shall be deemed insufficient, incomplete, and unfinished unless they have good and substantial banisters or railing on the sides thereof, or a strip of hewn timber at least eight by ten inches square, well

secured all round said wharves within ten inches of the outer edge thereof, except at the ends."

The argument is that a county has performed its duty to the public if it builds and maintains its wharves in accordance with this provision, and that, since this wharf complied with that section, it cannot be said that there was any negligence. We cannot accept this view. The statute quoted, and the sections immediately preceding, are very old ones, and have no reference, in our opinion, to the care required to be exercised by the owner and operator of a wharf, in so far as the public is concerned. They provide that, before any person may erect a wharf at the end of any street or road, he must apply to the proper city or county authorities and get permission from them. They are to fix the charges for the use of the wharf. The quoted section simply means that such a wharf shall not, so far as the city or county authorities are concerned, be considered as complete and ready for use without the guard or rail therein mentioned. Another reason for giving the quoted section the meaning we have is that such wharves would be privately owned and operated, and the city or county authorities would not have, and could not be given, power to determine what would be reasonable care in their operation. Besides, the statute (Rem. Comp. Stat., § 9617), [P. C. § 7272], which gives counties power to build and operate wharves, was passed many years after the statutes first mentioned, and it does not contain any provision as to when such a wharf shall be considered complete and sufficient.

The judgment is affirmed.

Tolman, C. J., Holcomb, Fullerton, and Askren, JJ., concur.