44 P.3d 845 (2002)
Jean KELLER, as general guardian of Casey Keller, an incompetent, Respondent,
v.
CITY OF SPOKANE, a municipal corporation, Petitioner,
Walter Balinski and Hazel Balinski, husband and wife, Defendants.
No. 70866-5.
Supreme Court of Washington, En Banc.
Argued November 8, 2001.
Decided April 25, 2002.
*846 Bryan Harnetiaux, Harbaugh & Bloom, Gary Neil Bloom, Debra Stephens, Spokane, Amicus Curiae on Behalf of Washington State Trial Lawyers Association.
Keating, Bucklin & McCormack, Andrew George Cooley, Seattle, Amicus Curiae on Behalf of Washington Defense Trial Lawyers.
Alexander, Bierman, I. Richard Lassman, Seattle, for Defendant.
Milton G. Rowland, James Anthony Richman, Asst. Spokane City Attorneys, Spokane, for Petitioner.
Roger A. Felice, Dawson & Meade, Edward A. Dawson, Spokane, for Respondent.
BRIDGE, J.
In this negligence action, the City of Spokane (City) seeks reversal of a Court of Appeals decision in favor of Jean Keller, as general guardian for Casey Keller. We hold that the trial court's instruction to the jury as to the City's duty to maintain its roadways was misleading and legally erroneous because it allowed the jury to conclude that the City owed Keller no duty if it found that Keller had acted negligently.

*847 I
The accident at issue in this case occurred at the intersection of Freya and Wellesley Avenue in Spokane. Traffic on Freya runs north/south and has a stop sign at the intersection with Wellesley, which runs east/west. However, there was no stop sign on Wellesley at the time of the accident. The speed limit on Wellesley is 30 miles per hour.
On Monday, June 19, 1989, Walter Balinski, who was driving his automobile southbound on Freya, stopped at the stop sign at the Freya/Wellesley intersection. Casey Keller drove his motorcycle westbound on Wellesley. Testimony indicated that Keller approached the intersection at speeds which may have been as low as 30 miles per hour or as high as 80 miles per hour. Balinski looked briefly to the left, but then focused his attention to his right and straight ahead before driving through the intersection. Balinski testified that his view to the left, the direction from which Keller was approaching, was unobscured for at least 300 feet.[1] As Balinski drove through the intersection, Keller crashed into his car. Keller suffered severe injuries.
Keller sued both Balinski and the City for negligence. Specifically, Keller alleged that the Freya/Wellesley intersection was dangerous, that the City was aware of the danger and had acted negligently in not adding stop signs to Wellesley, so as to render the intersection a four-way stop. The City denied the allegations. At trial, Keller presented evidence that the intersection was dangerous and that many accidents had occurred there. City traffic engineers testified that the intersection was dangerous and that a four-way stop was necessary. Keller also presented evidence that citizens complained to the City about the intersection and had petitioned the City for a stop light or four-way stop sign prior to the accident. Keller also established that both the national guidelines found in the Manual on Uniform Traffic Control Devices (MUTCD) and the City's own internal standards suggested the need for a four-way stop at the intersection. Finally Keller showed that the average speed through the intersection was 40 to 50 miles per hour and argued that that in itself suggested the need for a four-way stop.
The City conceded that the intersection had problems and that the traffic engineers had watched it for some time. The City argued, however, that the MUTCD guidelines were permissive, that the intersection was safe for ordinary travel, that it had adequate to excellent visibility, and that traffic was light at the time of the accident. The City also presented evidence that Keller was not wearing eye protection, his headlights were not on, and that his speed was excessive. The City invited the jury to find that the collision was avoidable but for Keller's speed.
The trial court instructed the jury that:
A city has a duty to exercise ordinary care in the signing and maintaining of its public streets to keep them in a condition that is reasonably safe for ordinary travel by persons using them in a proper manner and exercising ordinary care for their own safety.[[2]]
It is the duty of the city to eliminate an inherently dangerous condition, if one exists, and its existence is known, or should have been known to the city in the exercise of reasonable care.
Inherently dangerous, as used herein, means a danger existing at all times so as to require special precautions to prevent injury.
Instruction 13.[3]
Keller took exception to this instruction and asked the court to instruct the jury that the City's duty and breach are to be determined independent of the plaintiff's negligence. The court refused, stating that that was not the law.
*848 The jury returned a special verdict finding that both Keller and Balinski had acted negligently, but that the City had not. It further found that Keller was 60 percent at fault and that Balinski was 40 percent at fault. Keller appealed the jury verdict as to the finding that the City was not negligent.
The Court of Appeals, Division Three, reversed and remanded for a new trial.[4] The court held that instruction 13 erroneously allowed the jury to determine that the City had no duty at all if it found that Keller was negligent and that it failed to instruct the jury as to the City's duty of ordinary care to provide safe streets.[5] The court rejected the City's contention that it owed no duty unless the plaintiff is fault-free, holding that the City had a duty of ordinary care to maintain reasonably safe streets for the traveling public.[6] This court granted the City's petition for review.[7]

II

Elements of Negligence Generally
The elements of negligence are duty, breach, causation, and injury. Hartley v. State, 103 Wash.2d 768, 777, 698 P.2d 77 (1985). Since the Washington State Legislature waived sovereign immunity for municipalities in 1967, Laws of 1967, ch. 164, § 1, amended by Laws of 2001, ch. 119, § 1 (codified at RCW 4.96.010),[8] municipalities are generally held to the same negligence standards as private parties. Bodin v. City of Stanwood, 130 Wash.2d 726, 731, 927 P.2d 240 (1996).[9]
A party may maintain an action against a municipality if a duty can be shown. Meaney v. Dodd, 111 Wash.2d 174, 179, 759 P.2d 455 (1988). The municipality, as an individual, is held to a general duty of care, that of a "reasonable person under the circumstances." DAN B. DOBBS, THE LAW OF TORTS § 228, at 580 (2000). Whether a municipality owes a duty in a particular situation is a question of law, Hansen v. Friend, 118 Wash.2d 476, 479, 824 P.2d 483 (1992), and generally includes a determination of whether the incident that occurred was foreseeable. DOBBS, supra, § 229, at 582-83; King v. City of Seattle, 84 Wash.2d 239, 248, 525 P.2d 228 (1974) (holding that "foreseeability of the risk of harm to the plaintiff is an element of the duty question"); Berglund v. Spokane County, 4 Wash.2d 309, 321, 103 P.2d 355 (1940) (stating that whether county owed duty to negligent driver was one of foreseeability).
In a negligence action, in determining whether a duty is owed to the plaintiff, a court must not only decide who owes the duty, but also to whom the duty is owed, and what is the nature of the duty owed. Wick v. Clark County, 86 Wash.App. 376, 385, 936 P.2d 1201 (1997) (Morgan, J., concurring). The answer to the second question defines the class protected by the duty and the answer to the third question defines the standard of care. Id. at 386, 936 P.2d 1201. The class protected generally includes anyone foreseeably harmed by the defendant's conduct regardless of that person's own fault. Friend, 118 Wash.2d at 484, 824 P.2d 483.
Finally, the Legislature adopted the doctrine of comparative fault in 1981. Laws of 1981, ch. 27, § 8 (codified at RCW 4.22.005). RCW 4.22.005 states in part:

*849 In an action based on fault seeking to recover damages for injury or death to person or harm to property, any contributory fault chargeable to the claimant diminishes proportionately the amount awarded as compensatory damages for an injury attributable to the claimant's contributory fault, but does not bar recovery.
We have previously held that the adoption of comparative fault did not create or enhance a defendant's prior common law duty. Hansen v. Wash. Natural Gas Co., 95 Wash.2d 773, 778, 632 P.2d 504 (1981). "Rather, recovery is now permitted where it was previously denied after liability has been established." Id.

Common Law Scope of Municipal Duty
Keller and the amicus curiae Washington State Trial Lawyers Association Foundation (WSTLA Foundation) argue that the language in instruction 13, "by persons using them in a proper manner and exercising ordinary care for their own safety," improperly limits a municipality's duty to only fault-free plaintiffs. The City and the amicus curiae Washington Defense Trial Lawyers (WDTL) assert that the instruction is a correct statement of a municipality's duty under Washington law and that prior decisions make it clear that this duty is limited. Pet. for Review at 10-15; Br. of Amicus WDTL at 3-5. Keller and WSTLA Foundation respond that Washington's common law on municipal duty is confusing and erratic. Suppl. Br. of Resp't at 5; Br. of Amicus Curiae WSTLA Foundation at 9. Therefore, as a threshold matter, we must first determine the proper scope of a municipality's duty in building and maintaining its roadways before reaching the ultimate question of whether instruction 13 was proper.
The City relies on Hansen to support its position that instruction 13 provided a correct statement of a municipality's duty. Pet. for Review at 11. In Hansen, this court evaluated whether the trial court had erred in granting judgment notwithstanding the verdict for the defendant. Hansen, 95 Wash.2d at 775, 632 P.2d 504. The court examined whether a municipality had a duty to protect the plaintiff from injury where the plaintiff jaywalked across an area of the street that was under construction. Id. at 775, 632 P.2d 504. In doing so, the court stated that "a `municipality ... [is] obligated to exercise ordinary care to keep its public ways in a reasonably safe condition for persons using such ways in a proper manner and exercising due care for their own safety.'" Id. at 776, 632 P.2d 504 (alteration in original) (quoting Berglund, 4 Wash.2d at 313, 103 P.2d 355). The court also rejected the Court of Appeals assertion that the rule expressed in Berglund and in Nelson v. City of Tacoma, 19 Wash.App. 807, 577 P.2d 986 (1978) was no longer applicable because of the adoption of comparative fault. Hansen, 95 Wash.2d at 778, 632 P.2d 504.
The court's holding however, did not turn on whether the jury had been given the proper instruction, but on whether there was sufficient evidence to support the verdict. Id. at 777, 632 P.2d 504. The court concluded that under a municipality's general duty, there was no evidence that the defendant failed "to `exercise ordinary care to keep the public ways in such a condition that they are reasonably safe for ordinary travel by persons using them in a manner that can be reasonably anticipated.'" Id. (quoting jury instruction 10). Furthermore, although Hansen included the language challenged in this case, it is unclear whether that language was ever intended by this court to limit the class of plaintiffs covered by the municipality's duty or whether it was merely intended to establish the appropriate standard of care.
Several Court of Appeals cases have interpreted Hansen to hold that a municipality owes only a limited duty to those using its roadways. See Wick, 86 Wash.App. at 380-82, 936 P.2d 1201 (upholding jury instruction that used 6 WASHINGTON PATTERN JURY INSTRUCTIONS: CIVIL 140.01(WPI) language regarding municipalities' duty); Gunshows v. Vancouver Tours & Transit, Ltd., 77 Wash. App. 430, 434-35, 891 P.2d 46 (1995) (finding state owed no duty to negligent plaintiff even if plaintiff's negligence was foreseeable); Walker v. State, 67 Wash.App. 611, 617, 837 P.2d 1023 (1992) (stating that language, "`persons using such ways in a proper manner and exercising due care for their own *850 safety', qualifies the duty of the municipality" (quoting McKee v. City of Edmonds, 54 Wash.App. 265, 267, 773 P.2d 434 (1989))), rev'd, 121 Wash.2d 214, 217, 848 P.2d 721 (1993) (holding that Court of Appeals should not have reached jury instruction issue because plaintiff failed to preserve it); McKee, 54 Wash.App. at 267-68, 773 P.2d 434 (interpreting Hansen as qualifying municipalities' duty to only apply to those using roadways in proper manner).
However, this court's precedent has been inconsistent in the language it uses to define a municipality's duty; thus, a more thorough review of our cases is needed to determine the appropriate scope of this duty. A number of cases defining a municipality's duty include language similar to that used in the challenged instruction here. See Ruff v. King County, 125 Wash.2d 697, 704, 887 P.2d 886 (1995) ("[a] county has a duty to maintain its roadways in a reasonably safe condition for ordinary travel by persons using them in a proper manner");[10]McCluskey v. Handorff-Sherman, 125 Wash.2d 1, 6, 882 P.2d 157 (1994) (state has duty to "exercise ordinary care in the repair and maintenance of its public highways, keeping them in such a condition that they are reasonably safe for ordinary travel by persons using them in a proper manner"); Stewart v. State, 92 Wash.2d 285, 299, 597 P.2d 101 (1979) (stating that state has duty to "maintain its roads in such a condition that they are reasonably safe for persons using them in a proper manner and exercising ordinary care for their own safety"); Owens v. City of Seattle, 49 Wash.2d 187, 191, 299 P.2d 560 (1956) (municipalities are "obligated to exercise ordinary care to keep its public ways in a reasonably safe condition for persons using them in a proper manner and exercising due care for their own safety"); Parker v. Skagit County, 49 Wash.2d 33, 38, 297 P.2d 620 (1956) (municipalities are "`obligated to exercise ordinary care to keep its public ways in a reasonably safe condition for persons using such ways in a proper manner and exercising due care for their own safety'" (quoting Berglund, 4 Wash.2d at 313, 103 P.2d 355)).
There are also many cases that define a municipality's duty without including the challenged language and arguably expanding the class of persons to whom a duty is owed. See Provins v. Bevis, 70 Wash.2d 131, 138, 422 P.2d 505 (1967) (county is "obligated to exercise ordinary care to keep its public ways in a safe condition for ordinary travel"); Lucas v. Phillips, 34 Wash.2d 591, 597, 209 P.2d 279 (1949) (county has duty to "use such care as would keep [the bridge] in a reasonably safe condition for those who might go upon it"); Barton v. King County, 18 Wash.2d 573, 578, 139 P.2d 1019 (1943) (stating general rule that "municipality must maintain the improved portion of the highway in a reasonably safe condition for ordinary travel"); Fritch v. King County, 4 Wash.2d 87, 90, 102 P.2d 249 (1940) (county "must exercise reasonable care to see that the highways are maintained in a safe condition for ordinary travel"); Gray v. King County, 140 Wash. 169, 171, 248 P. 397 (1926) (county obligated to maintain wharf in such condition as to be reasonably safe for those who might go on it); Neel v. King County, 53 Wash. 490, 497, 102 P. 396 (1909) (upholding jury instruction, which stated that "`[i]t is the duty of the county ... to maintain its public highways and roads in a reasonably safe condition for public travel'"); Teater v. City of Seattle, 10 Wash. 327, 329, 38 P. 1006 (1894) ("city is not an insurer of the safety of its streets, but is only required to keep them in a safe condition for ordinary travel").[11]
*851 Much of the current confusion as to a municipality's duty seems to stem from the language used in Berglund. In Berglund, the parents of a minor child sued Spokane County to recover damages for injuries the child sustained when she was struck by an automobile while crossing a bridge. Berglund, 4 Wash.2d at 310-11, 103 P.2d 355. Both the plaintiff and the car were traveling westbound, but on opposite sides of the bridge. Id. at 312, 103 P.2d 355. The plaintiff alleged that heavy traffic forced the car to the other side of the bridge where it struck the plaintiff. Id. The trial court sustained the defendant's demurrer to the complaint. Id. at 311, 103 P.2d 355.
In examining the case, this court stated that
although a municipality is not an insurer against accident nor a guarantor of the safety of travelers, it is nevertheless obligated to exercise ordinary care to keep its public ways in a reasonably safe condition for persons using such ways in a proper manner and exercising due care for their own safety.
Id. at 313, 103 P.2d 355. However, the Berglund court also stated a municipality's duty as requiring "`ordinary care to provide against such dangers to the traveling public as may reasonably be anticipated,'" and in terms of the care an "ordinarily reasonable person would exercise under the same or similar circumstances." Id. at 314-15, 103 P.2d 355 (quoting 8 AM.JUR. Bridges § 38, at 936 (1937)).
In addition, the court incorporated the element of foreseeability into its formulation of a municipality's duty. Id. at 319-20, 103 P.2d 355. The court stated a municipality could be held liable if the general type of harm that occurred was foreseeable even if the specific act was not. Id. The court rejected the defendant's argument that a municipality has no duty "to keep its streets and bridges safe for those who use them unlawfully." Id. at 320, 103 P.2d 355. The court held that the question was one of foreseeability and that "[i]f, under the surrounding conditions, the negligence of drivers at the particular point was reasonably to be anticipated, it would be the county's duty to exercise reasonable care to protect the public against the resulting dangers." Id. at 321, 103 P.2d 355.[12]
Thus, interpreting our cases as a whole, the language used in Berglund and other decisions by this court does not limit the scope of a municipality's duty to only those using the roads and highways in a nonnegligent manner. Our pattern instructions reflect this view. WPI 140.01, at 136 (Supp. 1994). Although including the challenged language in the instruction, the comment in WPI 140.01 clearly states that "[d]uty, as defined in this instruction, is not determined by the negligence, if any, of a plaintiff." Id. It adds, to "avoid juror confusion of the duty of a defendant with the issue of the negligence of a plaintiff, a separate clarifying instruction may be appropriate." Id.
We therefore hold that a municipality owes a duty to all persons, whether negligent *852 or fault-free, to build and maintain its roadways in a condition that is reasonably safe for ordinary travel.

Jury Instruction 13 and WPI 140.01
"Jury instructions are sufficient when they allow counsel to argue their theory of the case, are not misleading, and when read as a whole properly inform the trier of fact of the applicable law." Bodin, 130 Wash.2d at 732, 927 P.2d 240. Even if an instruction is misleading, it will not be reversed unless prejudice is shown. Walker, 67 Wash.App. at 615, 837 P.2d 1023. A clear misstatement of the law, however, is presumed to be prejudicial. State v. Wanrow, 88 Wash.2d 221, 239, 559 P.2d 548 (1977).
Keller argues that because instruction 13 limits a municipality's duty to only fault-free plaintiffs, it conflicts with the waiver of sovereign immunity for municipalities and the doctrine of comparative fault. Suppl. Br. of Resp't at 11. Because we hold that the challenged language merely defines the standard of care a municipality must exercise and does not limit the class of plaintiffs to only those who are fault free, we find no conflict between the challenged language and Washington's waiver of sovereign immunity or adoption of comparative fault.[13]
However, we agree with the Court of Appeals that to the extent instruction 13 allowed the jury to premise the City's duty on Keller's negligence, it was misleading and legally erroneous. The trial court specifically refused to give Keller's requested instruction regarding comparative fault[14] to clarify the City's duty because it erroneously concluded that that was not the law. RP at 2667. However, as discussed above, this court has not limited the class of potential plaintiffs to only those using the roads in a nonnegligent manner. See Berglund, 4 Wash.2d at 321, 103 P.2d 355.
The confusion inherent in the challenged language in instruction 13 and WPI 140.01 is evident when one examines how it has been interpreted by the Court of Appeals. Compare Gunshows, 77 Wash.App. 430, 891 P.2d 46, Walker, 67 Wash.App. at 617, 837 P.2d 1023 and McKee, 54 Wash.App. at 267-68, 773 P.2d 434, with Keller, 104 Wash.App. at 554-55, 17 P.3d 661, Wojcik v. Chrysler Corp., 50 Wash.App. 849, 854, 751 P.2d 854 (1988) (holding that "[a] county has a duty to maintain its highways in a reasonably safe condition for its users"), and Raybell v. State, 6 Wash.App. 795, 802, 496 P.2d 559 (1972).
Furthermore, taken as a whole, instruction 13 did not allow Keller to argue his theory of the casethat the City's negligence is to be determined independent of Keller's negligence. The second two paragraphs of instruction 13, which include the City's duty as to "inherently dangerous conditions," do not clarify the City's primary duty. It would still be possible for the jury to conclude that the City owed Keller no duty at all if it determined that Keller was negligent. Although it is unclear whether *853 the jury would have reached a different conclusion had it been properly instructed, to the extent that the instruction misstated the law, it is presumed to be prejudicial. Cf. Wanrow, 88 Wash.2d at 239, 559 P.2d 548.
Finally, as Keller contends and the Court of Appeals agreed, the instruction erroneously allows a jury to determine the City's primary duty, a function which is properly left to the court. Suppl. Br. of Resp't at 12 (citing Folsom v. Burger King, 135 Wash.2d 658, 958 P.2d 301 (1998); Schooley v. Pinch's Deli Market, Inc., 134 Wash.2d 468, 951 P.2d 749 (1998)); Keller, 104 Wash. App. at 556, 17 P.3d 661. Therefore, we hold that instruction 13 and WPI 140.01 are inherently misleading and legally erroneous to the extent that they allow a jury to premise a municipality's duty on the absence of negligence by the plaintiff.
The City and WDTL argue that by rejecting a more limited duty for municipalities, we will make municipalities liable for all traffic accidents. Pet. for Review at 16-18; Br. of Amicus Curiae WDTL at 5. The City asserts that government entities stand in a "somewhat different relation to accident victims that [sic] do other persons," Pet. for Review at 16 (citing McCluskey, 125 Wash.2d at 9, 882 P.2d 157). By rejecting WPI 140.01, the City contends that the delicate balance between a municipality's tort liability and its obligation to build and maintain roads will be altered. Id. at 17-18, 882 P.2d 157 (citing McKee, 54 Wash.App. at 268, 773 P.2d 434).
We have held that municipalities are not insurers against accidents nor the guarantors of public safety and are not required to "anticipate and protect against all imaginable acts of negligent drivers." Stewart, 92 Wash.2d at 299, 597 P.2d 101. Contrary to the City and WDTL's assertion, however, by removing the challenged language from the jury instruction, we will not render municipalities liable for all acts of negligence. As discussed in Berglund, a municipality only has a duty to exercise ordinary care to build and maintain its roadways in a reasonably safe manner for the foreseeable acts of those using the roadways. Berglund, 4 Wash.2d at 319-21, 103 P.2d 355. Furthermore, the court still retains its gatekeeper function and may determine that a municipality's actions were not the legal cause of the accident. See King, 84 Wash.2d at 247-48, 525 P.2d 228.[15] Finally, even if a jury were to find that a municipality was negligent, it may still conclude that the municipality's negligence is not the cause in fact of the plaintiff's injuries. Thus, by changing the jury instruction to eliminate the challenged language, a municipality would not become liable for every accident that occurs on its roadways.

Proposed Instruction
Keller and WSTLA Foundation request that this court adopt an ordinary negligence standard for cases involving alleged municipal negligence in the building or maintenance of roadways. Suppl. Br. of Resp't at 9-10; Br. of Amicus Curiae WSTLA Foundation at 17. Specifically, Keller argues that a duty analogous to that imposed by this court in Bodin should be adopted coupled with a "but for" cause instruction (WPI 15.01) and, if factually warranted, an intervening/superseding cause instruction (WPI 12.05). Suppl. Br. of Resp't at 9-10. In Bodin, this court stated that the ordinary or reasonable care that a municipality must exercise is that "`care which an ordinarily reasonable person would exercise under the same or similar circumstances.'" Bodin, 130 Wash.2d at 733, 927 P.2d 240 (quoting Berglund, 4 Wash.2d at 315, 103 P.2d 355).
Thus, Keller and WSTLA Foundation request that WPI 140.01 be amended to state that
A {County} {City} {Town} {State} has a duty to exercise ordinary care in the {construction} {repair} {maintenance} of its public {roads} {streets} {highways} to keep them in a reasonably safe condition for travel.
Suppl. Br. of Resp't at 20; Br. of Amicus Curiae WSTLA Foundation at 17.
With one exception, the proposed instruction is consistent with the duty statement *854 articulated by this court in many earlier cases. See Provins, 70 Wash.2d at 138, 422 P.2d 505; Lucas, 34 Wash.2d at 597, 209 P.2d 279; Barton, 18 Wash.2d at 578, 139 P.2d 1019; Fritch, 4 Wash.2d at 90, 102 P.2d 249; Gray, 140 Wash. at 171, 248 P. 397; Neel, 53 Wash. at 497, 102 P. 396; Teater, 10 Wash. at 329, 38 P. 1006. The only difference in the proposed language is that it eliminates the word "ordinary" as a modifier for the term "travel." WSTLA Foundation argues that "ordinary" may lead the jury to deny recovery if, for example, it finds a motorist's negligent conduct extraordinary. Br. of Amicus Curiae WSTLA Foundation at 17.
We conclude that adopting this standard would be consistent with the municipal duty defined by this court and would eliminate the confusion caused by the additional language "by persons using them in a proper manner and exercising ordinary care for their own safety."[16] It would also be consistent with the "ordinary care" standard imposed on municipalities for other negligence actions. See Bodin, 130 Wash.2d at 733, 927 P.2d 240. However, we decline to remove the modifier "ordinary" from travel, as that would seem to change the scope of the duty. Thus, we hold that when instructing a jury as to a municipality's duty, the correct instruction should read as follows:
A {County} {City} {Town} {State} has a duty to exercise ordinary care in the {construction} {repair} {maintenance} of its public {roads} {streets} {highways} to keep them in a reasonably safe condition for ordinary travel.[[17]]

Overruling Prior Precedent
Finally, the City argues that to conclude that instruction 13 and WPI 140.01 are misleading would require this court to overrule Hansen. Pet. for Review at 18-19. We disagree. First, Hansen does not purport to limit a municipality's duty to only nonnegligent plaintiffs. Second, because Hansen reviewed the trial court's grant of judgment notwithstanding the verdict and ultimately held that there was insufficient evidence to establish that the city had breached its duty to the plaintiff, it is distinguishable on its facts. Hansen, 95 Wash.2d at 776-77, 632 P.2d 504.
Although several Court of Appeals cases state that municipalities only owe a duty to nonnegligent users of their roadways, with the exception of Wick, these cases are factually distinguishable because the streets were found to be safe for ordinary travel. See Gunshows, 77 Wash.App. 430, 891 P.2d 46 (finding intersection safe for ordinary travel); Walker, 67 Wash.App. at 617, 837 P.2d 1023; McKee, 54 Wash.App. at 267-68, 773 P.2d 434 (finding that city had provided adequate cross-walks). Only Wick upheld a jury instruction similar to the one in this case. Wick, 86 Wash.App. at 380-82, 936 P.2d 1201. Therefore, only Wick need be directly overruled.

III
Because instruction 13, and therefore by reference WPI 140.01, may have lead the jury to conclude that the City owed no duty to Keller because of his own negligence, we find it misleading and legally erroneous.[18] *855 We therefore affirm the Court of Appeals decision and remand the case for a new trial consistent with this opinion.
ALEXANDER, C.J., and SANDERS, IRELAND, and CHAMBERS, JJ., concur.
JOHNSON, J. (dissenting).
I would hold that the jury was properly instructed in this case and that it properly found the city was not liable for designing this intersection as a two-way stop. Rather than adhering to our settled jurisprudence in this area, the majority overrules our prior cases and unnecessarily confuses and expands the scope of a municipality's duty to design and maintain its roads.
We have addressed the relationship between comparative fault and municipal duty a number of times. One of the leading cases dealing with this issue is Hansen v. Washington Natural Gas Co., 95 Wash.2d 773, 778, 632 P.2d 504 (1981), which the majority asserts is distinguishable on its facts. Majority at 854. I disagree. Our Hansen decision specifically addressed the language of this jury instruction. A close reading of both our decision and the underlying Court of Appeals decision reveals the majority's error. In its Hansen ruling, the Court of Appeals held that the statement of a municipality's duty as an obligation "to exercise ordinary care to keep its public ways in a reasonably safe condition for persons using them in a proper manner and exercising due care for their own safety"[1] was correct "when contributory negligence was a complete defense to a tort claim, but is not applicable since this state adopted comparative negligence." Hansen v. Wash. Natural Gas Co., 27 Wash. App. 127, 133, 615 P.2d 1351 (1980). The Court of Appeals held a jury instruction omitting the italicized language properly stated a municipality's duty to maintain its roads, precisely as the majority does now.
However, we rejected that approach and ruled:
This holding is erroneous. The adoption of comparative negligence does not create a new liability where none previously existed. Rather, recovery is now permitted where it was previously denied after liability has been established. The doctrine of comparative negligence does not enhance duty. It merely removes the bar to recovery when the plaintiff has been negligent.
Hansen, 95 Wash.2d at 778, 632 P.2d 504 (citation omitted).
Moreover, in reaching our decision, we relied upon Prybysz v. City of Spokane, 24 Wash.App. 452, 601 P.2d 1297 (1979). See Hansen, 95 Wash.2d at 778, 632 P.2d 504. Prybysz also addressed the language of a jury instruction describing a municipality's duty. In Prybysz, the plaintiff specifically contended that the adoption of comparative negligence rendered a jury instruction expressing the duty with the disputed language "out of date." The Prybysz court rejected this contention and concluded, "[s]ince no negligence was found on the part of the City, potential errors relating to comparative negligence are moot." Prybysz, 24 Wash.App. at 460, 601 P.2d 1297. Hansen, 95 Wash.2d 773, 632 P.2d 504 is not distinguishable, as the majority asserts, and should control the result in this case.
Perhaps more importantly, the majority's approach represents a significant revision of the scope of a municipality's duty. This pattern jury instruction is based on our cases analyzing the interplay between comparative fault and a municipality's duty to design and maintain public roads. Hansen, 95 Wash.2d 773, 632 P.2d 504 will not be the only case overruled by the majority's approach.[2]
*856 The majority expands the duty municipalities have in the design and maintenance of roads by making the nature of the duty owed more general rather than more specific. Contrary to the majority's assertion, municipalities are not held to "a general duty of care, that of a `reasonable person.'" Majority at 854 (quoting Dan B. Dobbs, The Law of Torts § 228, at 580 (2000)). Although a general duty of care "could conceivably be applied in all cases ... courts in fact impose different standards of duty." Dobbs, supra, § 228, at 580-81. In the design and maintenance of roads and streets, municipalities are held to the standard of duty of a reasonable municipality under the circumstances. A municipality has a duty to exercise ordinary care in the maintenance and repair of its public highways and to keep them in such a condition that they are reasonably safe for ordinary travel by persons using them in a proper manner and exercising ordinary care for their own safety. Ruff v. County of King, 125 Wash.2d 697, 704, 887 P.2d 886 (1995); Stewart v. State, 92 Wash.2d 285, 297, 597 P.2d 101 (1979).
By expanding this duty, the majority rejects the principles and concerns our cases have recognized. In Stewart, a claim was made based upon the alleged faulty design of a freeway bridge. We rejected an attempt to challenge a jury instruction and stated, "the State is correct in arguing that if the State were required to anticipate and protect against all imaginable acts of negligent drivers, it would become an insurer against all such acts." Stewart, 92 Wash.2d at 299, 597 P.2d 101.
More recently, we addressed this issue in Ruff, 125 Wash.2d 697, 887 P.2d 886. Although Ruff's analysis dealt with a grant of summary judgment on facts involving a municipal duty to install a roadway guardrail, its holding turned on the municipality's duty to design and maintain its roadways. We quoted the above language from Stewart and found further support for our approach in Leber v. King County, 69 Wash. 134, 124 P. 397 (1912):
We think it will require no argument to make plain the fact that here there was no extraordinary condition or unusual hazard of the road. A similar condition is to be found upon practically every mile of hill road in the state. The same hazard may be encountered a thousand times in every county of the state. Roads must be built and traveled, and to hold that the public cannot open their highways until they are prepared to fence their roads with barriers strong enough to hold a team and wagon when coming in violent contact with them, the condition being the ordinary condition of the country, would be to put a burden upon the public that it could not bear. It would prohibit the building of new roads and tend to the financial ruin of the counties undertaking to maintain the old ones. The unusual danger noticed by the books is a danger in the highway itself.

Ruff, 125 Wash.2d at 706, 887 P.2d 886 (quoting Leber, 69 Wash. at 136-37, 124 P. 397). Interestingly, Ruff rejected the Washington State Trial Lawyers Association's argument, which the majority now accepts, that a municipality's duty should be expanded. The majority, by rejecting the traditional scope of a municipality's duty in the design and maintenance of roadways opens the door to the unreasonable burdens we identified in Ruff.
This issue is not something new to our courts. The scope of a municipality's duty to design and maintain roads arguably has been settled since 1894, and is faithfully reproduced in the disputed language of the pattern jury instruction. See Teater v. City of Seattle, 10 Wash. 327, 329, 38 P. 1006 (1894) (holding city was required to keep street in a reasonably safe condition for persons traveling in the usual mode and exercising ordinary care). The duty is not expansive. Even the majority, by retaining "ordinary travel," concedes a municipality does not have an unlimited duty to all persons using its roadways in any manner. The majority merely shrinks the more clear "ordinary travel by persons using them in a proper manner and exercising ordinary care in their *857 own safety" language down to "ordinary." Majority at 851, 853-54. This result needlessly confuses a municipality's duty.[3]
Finally, the majority's latest iteration of the duty owed will not benefit Keller in this case. The majority suggests Keller may have been traveling at speeds as low as the posted speed limit of 30 miles per hour. Majority at 847. However, Keller's own accident reconstruction expert placed his speed at 45 miles per hour and conceded that the testimony of the lone eyewitness placing Keller's speed at the lower rate was impossible to reconcile with the physical evidence. In fact, the 49-foot-long skid marks at the scene, and other evidence, place Keller's speed as high as twice the posted speed limit before he applied his brakes. Even under the majority's expanded duty, this is not "ordinary" travel. It is not surprising the jury found the City of Spokane not liable. To attribute this result to confusion regarding contributory negligence, an affirmative defense not presented at trial, is unpersuasive.
The pattern jury instruction accurately and clearly defines the scope of a municipality's duty to maintain its roads. To find it is an incorrect statement of law, the majority misstates the relationship between comparative fault and the nature of the duty that may give rise to a finding of negligence, and overrules our settled jurisprudence to the contrary. I would reverse the Court of Appeals.
SMITH, MADSEN, and OWENS, JJ., concur.
NOTES
[1] A photograph taken at the intersection showed that cars were visible from over 700 feet from the intersection.
[2] The first paragraph of instruction 13 is taken directly from 6 WASHINGTON PATTERN JURY INSTRUCTIONS: CIVIL 140.01, at 136 (3d ed. Supp. 1994) (WPI).
[3] Clerk's Papers at 609. The Report of Proceedings (RP) refers to instruction 13 by its original number, 12.
[4] Keller v. City of Spokane, 104 Wash.App. 545, 17 P.3d 661 (2001).
[5] Id. at 551, 17 P.3d 661.
[6] Id. at 551-52, 17 P.3d 661.
[7] Keller v. City of Spokane, 144 Wash.2d 1001, 29 P.3d 717 (2001).
[8] RCW 4.96.010 states:

All local governmental entities, whether acting in a governmental or proprietary capacity, shall be liable for damages arising out of their tortious conduct, or the tortious conduct of their past or present officers, employees, or volunteers while performing or in good faith purporting to perform their official duties, to the same extent as if they were a private person or corporation.
The Legislature similarly waived sovereign immunity for the state in 1961. See Laws of 1961, ch. 136, § 1 (codified at RCW 4.92.090).
[9] Without cite to authority, the dissent asserts that municipalities are held to a different standard than private parties. See dissent at ___. However, this conclusion completely ignores RCW 4.96.010 and Bodin.
[10] The dissent conveniently paraphrases Ruff so that it includes the clause, "and exercising ordinary care for their own safety." Dissent at 856. However, Ruff does not articulate a municipality's duty as such, but only states, "[a] county has a duty to maintain its roadways in a reasonably safe condition for ordinary travel by persons using them in a proper manner." Ruff, 125 Wash.2d at 704, 887 P.2d 886. Although this omission may appear to be minor, it undercuts the dissent's position that a municipality's duty is clear and instead demonstrates the inconsistency of this court's articulation of the duty.
[11] In opining that we are rejecting the "traditional scope of a municipality's duty," the dissent fails to discuss or even attempt to distinguish the decisions by this court that do not use the challenged language. See dissent at 857. In fact the dissent goes to great lengths to state that a municipality's duty has been settled since 1894 and then proceeds to misstate this court's holding in Teater. Dissent at 856-57. The dissent cites Teater as holding that the "city was required to keep street in a reasonably safe condition for persons traveling in the usual mode and exercising ordinary care." Id. (emphasis added). In reality, the Teater court's articulation of a municipality's duty does not include the challenged language attributed to it by the dissent. Teater clearly states that a "city is not an insurer of the safety of its streets, but is only required to keep them in a safe condition for ordinary travel." Teater, 10 Wash. at 329, 38 P. 1006.
[12] It is interesting that the dissent relies heavily on Hansen but fails to even mention Berglund, which the Hansen court relied on in articulating a municipality's duty. See Hansen, 95 Wash.2d at 776, 632 P.2d 504. Furthermore, the dissent's reliance on Prybysz v. City of Spokane, 24 Wash. App. 452, 601 P.2d 1297 (1979) is misplaced. Although the Prybysz court did state that the adoption of comparative negligence did not affect a municipality's duty, a concept we do not disagree with, it specifically declined to decide whether the duty should be limited to only "travelers exercising reasonable care." Prybysz, 24 Wash.App. at 459, 601 P.2d 1297. Furthermore, the court there upheld the instruction given by the trial court, which did not include the challenged language in WPI 140.01. Id. at 455-56, 601 P.2d 1297. In so doing, the court acknowledged that the trial court's instruction was more favorable to the plaintiff than WPI 140.01 and reflected the trial court's concern that "if the jury should find the plaintiffs were contributorially negligent, it might preclude recovery altogether." Id. at 456, 601 P.2d 1297.
[13] The dissent asserts that WPI 140.01 "is based on our cases analyzing the interplay between comparative fault and a municipality's duty to design and maintain public roads." Dissent at 855. The problem with the dissent's position is two-fold. First, the comment to WPI 140.01 (Supp. 1994) states that "[d]uty, as defined in this instruction, is not determined by the negligence, if any, of a plaintiff." Second, under the doctrine of comparative fault, the plaintiff's own negligence is only to be considered in determining causation and damages. See Lucas, 34 Wash.2d at 597, 209 P.2d 279 (finding that defendants' actions, even though negligent, were not superseding causes with respect to county's negligence, if under circumstances county should have realized that drivers might act as they did); Berglund, 4 Wash.2d at 321, 103 P.2d 355; WPI 11.01 (Supp. 1994) ("Contributory negligence is negligence on the part of a person claiming injury or damage which is a proximate cause of the injury or damage complained of."); WPI 11.07 (Supp. 1994) (determining degree of contributory negligence in order to determine damages owed). To make the plaintiff's negligence part of a municipality's duty would, in effect, bar the plaintiff's recovery before determining whether the municipality breached its duty. This concept of contributory fault was abolished in Washington in 1981. See RCW 4.22.005. Even the City does not argue that the existing jury instruction was ever meant to limit the scope of a municipality's duty to only fault-free plaintiffs. See Pet. for Review at 16.
[14] Keller requested that the trial court instruct the jury that "The duty of the City as defined in this Instruction is not determined by the negligence, if any, of Casey Keller." RP at 2665.
[15] Legal causation "involves a determination of whether liability should attach as a matter of law given the existence of cause in fact." Hartley, 103 Wash.2d at 779, 698 P.2d 77.
[16] The dissent asserts that this court in Ruff rejected WSTLA Foundation's argument to "expand" the scope of a municipality's duty. Dissent at 856. The dissent, however, fails to state that we rejected WSTLA Foundation's request, not on the merits, but because neither party had argued foreseeability and the court need not decide an issue raised only by an amicus. Ruff, 125 Wash.2d at 704 n. 2, 887 P.2d 886.
[17] The dissent repeatedly states that in adopting this language, we are "expanding" a municipality's duty. See dissent at 855, 855-856. However, as discussed above, because a municipality's duty was never limited to only fault-free plaintiff's, see Berglund, 4 Wash.2d at 320-21, 103 P.2d 355, nor could it be under Washington's adoption of comparative fault, we have not expanded its scope. We have merely clarified the language used to define the duty so as to eliminate confusion. Furthermore, the language we adopt is consistent with this court's articulation of the duty in many previous cases. See Provins, 70 Wash.2d at 138, 422 P.2d 505; Lucas, 34 Wash.2d at 597, 209 P.2d 279; Barton, 18 Wash.2d at 578, 139 P.2d 1019; Fritch, 4 Wash.2d at 90, 102 P.2d 249; Gray, 140 Wash. at 171, 248 P. 397; Neel, 53 Wash. at 497, 102 P. 396; Teater, 10 Wash. at 329, 38 P. 1006.
[18] The dissent misstates our reasoning when it asserts that we hold that WPI 140.01 is an "incorrect statement of law." Dissent at 857. As discussed above, this court has articulated a municipality's duty in various ways. We merely conclude that to the extent WPI 140.01 allows a jury to determine that a municipality has no duty if the plaintiff was negligent, it does misstate the law. See Berglund, 4 Wash.2d at 320-21, 103 P.2d 355.
[1] Hansen v. Wash. Natural Gas Co., 27 Wash. App. 127, 132, 615 P.2d 1351 (1980) (quoting Owens v. City of Seattle, 49 Wash.2d 187, 191, 299 P.2d 560 (1956)), rev'd, 95 Wash.2d 773, 632 P.2d 504 (1981).
[2] See, e.g., Ruff v. County of King, 125 Wash.2d 697, 704, 887 P.2d 886 (1995); McCluskey v. Handorff-Sherman, 125 Wash.2d 1, 7, 882 P.2d 157(1994); Selvig v. Caryl, 97 Wash.App. 220, 223, 983 P.2d 1141 (1999); Wick v. Clark County, 86 Wash.App. 376, 381, 936 P.2d 1201 (1997); Gunshows v. Vancouver Tours & Transit, Ltd., 77 Wash.App. 430, 434, 891 P.2d 46 (1995); McKee v. City of Edmonds, 54 Wash.App. 265, 267, 773 P.2d 434 (1989); Fernandez v. Dep't of Highways, 49 Wash.App. 28, 33, 741 P.2d 1010 (1987).
[3] Both the plaintiff and the Washington State Trial Lawyers Association Foundation recognize that leaving "ordinary" in the phrase "ordinary travel" limits a municipality's duty under the pattern jury instruction and have argued to remove "ordinary" entirely.