# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 49196-6-II |
| Respondent, | |
| v. | |
| DONNA NOELLE JESMER, aka DONNA NOELLE COX, aka DONNA NOELLE NICHOLSON, | UNPUBLISHED OPINION |
| Appellant. | |

SUTTON, J. — Donna N. Jesmer appeals her convictions for first degree robbery, second degree assault, and felony harassment. Jesmer argues that the trial court erred in refusing to give a jury instruction explaining the legal effect of a quitclaim deed. She further argues that the trial court did not properly instruct the jury on how to deliberate and did not properly admonish the jury to not discuss the case during recesses.

We hold that because Jesmer was able to fully argue her theory of the case without the proposed quitclaim deed instruction, the trial court did not abuse its discretion by denying the proposed instruction. We also hold that because the trial court properly instructed the jury on how it should deliberate and properly admonished the jury to not discuss the case during recesses, the trial court did not deprive Jesmer of a unanimous verdict. We affirm the convictions.

FACTS

In October of 2008, Jesmer's mother, Sandra Rodewald, moved to El Salvador for a business opportunity. In December of that year, Jesmer moved into Rodewald's home. Both

Rodewald and Jesmer testified at trial that at some point between the end of 2008 and October 2013, Rodewald executed a quitclaim deed in Jesmer's name. Jesmer never recorded this deed. In late 2013, Rodewald moved back into the home and significant tension between Rodewald and Jesmer followed. On January 26, 2016, an altercation broke out between the two and Jesmer "took off." Verbatim Report of Proceedings (VRP) at 77.

On January 29th, Jesmer returned to the home with her son. Rodewald told the two that they were not supposed to be there, and they responded that they were "coming in to get [their] things." VRP at 82. Rodewald testified that Jesmer assaulted her, without provocation, and stole some of Rodewald's personal property from the home. Jesmer denied taking any property that was not hers. Jesmer admitted that she assaulted Rodewald but claimed to have done so to defend herself and her son.

At trial, Jesmer's counsel proposed a jury instruction detailing the legal effect of a quitclaim deed.[1] Jesmer's counsel explained that it would bolster Jesmer's theory that Rodewald

---

[1] The proposed quitclaim jury instruction mirrored the language in RCW 64.04.050:

Quitclaim deeds may be in substance in the following form:

The grantor (here insert the name or names and place of residence), for and in consideration of (here insert consideration) conveys and quitclaims to (here insert grantee's name or names) all interest in the following described real estate (here insert description), situated in the county of . . . . . ., state of Washington. Dated this . . . . day of . . . . . ., [year] . . . .

Every deed in substance in the above form, when otherwise duly executed, shall be deemed and held a good and sufficient conveyance, release and quitclaim to the grantee, his or her heirs and assigns in fee of all the then existing legal and equitable rights of the grantor in the premises therein described, but shall not extend to the after acquired title unless words are added expressing such intention.

Clerk's Papers at 39; RCW 64.04.050

had motive to fabricate her testimony because she was worried that Jesmer would claim ownership of the house. The trial court denied the proposed instruction because it determined that (1) the deed was not meant to permanently transfer title, (2) the instruction would be unhelpful and confuse the jury, (3) a quitclaim deed was not an element of any crime charged, (4) it may lead to a slippery slope of more jury instructions, (5) Jesmer could still argue Rodewald's motive, and (6) because both Jesmer and Rodewald testified to the execution of the quitclaim deed, it was not an issue in dispute. Jesmer's counsel then further stated that the quitclaim deed was also relevant to the charges of second degree assault and felony harassment because the proposed jury instructions regarding self-defense and stand your ground could inform the jury that Jesmer had a right to be in the house. The trial court did instruct the jury on self-defense and stand your ground. *See* Clerk's Papers (CP) at 71-73.

The jury found Jesmer guilty of first degree robbery, second degree assault and felony harassment.[2] It also found domestic violence by special verdict on all counts. The trial court imposed a standard range sentence. Jesmer appeals her convictions.

ANALYSIS

I. PROPOSED QUITCLAIM DEED JURY INSTRUCTION

A. STANDARD OF REVIEW

We review alleged errors of law in a trial court's jury instructions de novo. *Fergen v. Sestero*, 182 Wn.2d 794, 803, 346 P.3d 708 (2015). However, absent a legal error, we review a trial court's decision regarding the specific language of an instruction or whether to give an

---

[2] Jesmer was acquitted of first degree theft, first degree trafficking in stolen property, and fourth degree assault.

instruction for an abuse of discretion. *State v. Jensen*, 149 Wn. App. 393, 399, 203 P.3d 393 (2009). An abuse of discretion exists when a trial court's exercise of its discretion is based upon untenable grounds or reasons; a decision is based on untenable reasons if it is based on an incorrect standard. *State v. Hamilton*, 196 Wn. App. 461, 476 n.8, 383 P.3d 1062 (2016), *review denied*, 187 Wn.2d 1026 (2017).

"'Jury instructions are sufficient when they allow counsel to argue their theory of the case, are not misleading, and *when read as a whole* properly inform the trier of fact of the applicable law.'" *State v. Aguirre,* 168 Wn.2d 350, 363–64, 229 P.3d 669 (2010) (internal quotation marks omitted) (quoting *Keller v. City of Spokane*, 146 Wn.2d 237, 249, 44 P.3d 845 (2002) (emphasis added). A defendant is entitled to have his or her theory of the case submitted to the jury under appropriate instructions when substantial evidence in the record supports that theory. *State v. Harvill,* 169 Wn.2d 254, 259, 234 P.3d 1166 (2010). When determining if the evidence at trial was sufficient to support the giving of an instruction, we view the supporting evidence in the light most favorable to the party that requested the instruction. *State v. Fernandez-Medina*, 141 Wn.2d 448, 455–56, 6 P.3d 1150 (2000).

B. FIRST DEGREE ROBBERY

On appeal, Jesmer argues that the proposed quitclaim deed instruction would have exculpated her from the first degree robbery charge because "she only took what was already hers." Br. of Appellant at 16. Jury instructions need to be relevant to the evidence presented in order to be given. *State v. Linehan*, 147 Wn.2d 638, 643, 56 P.3d 542 (2002). To convict Jesmer of first degree robbery, the State needed to prove that the defendant unlawfully took "personal property" from Rodewald. CP at 62. The proposed quitclaim deed instruction explained that a grantor

transfers their interest in real property and does not refer to "personal property." CP at 39. Because the instruction had no relation to the crime charged of first degree robbery, it was irrelevant and did not need to be given.

Thus, we hold that the trial court did not abuse its discretion in refusing to give the proposed quitclaim deed instruction as it pertained to the charge of first degree robbery.

C.  SECOND DEGREE ASSAULT AND FELONY HARASSMENT

Jesmer also argues that the proposed quitclaim deed instruction would have bolstered her defense against the second degree assault and felony harassment charges and shown the jury that Rodewald had a motive to lie. The jury was instructed on self-defense and stand your ground related to the second degree assault and felony harassment charges.

The "stand your ground" jury instruction stated,

It is lawful for a person who is in a place where that person has a right to be and who has reasonable grounds for believing that he or she is being attacked to stand his or her ground against such attack by the use of lawful force.

CP at 73. Jesmer argues that the proposed quitclaim deed instruction "would have assisted the jury in assessing Jesmer's defensive theory that she had the right to stand her ground and use lawful force to protect herself against her mother's physical and verbal attacks at the house" because it was Jesmer's home. Br. of Appellant at 22. During closing, Jesmer's counsel argued that she owned the home and that Rodewald had a motive to lie. Jesmer was able to argue her theory of the case because she put forth all of her arguments at closing. Because Jesmer was allowed to argue her theory of the case to the jury, we hold that the trial court did not abuse its discretion in refusing to instruct the jury on the effect of a quitclaim deed.

5

## II. UNANIMOUS VERDICT

Jesmer next argues that the trial court failed to instruct the jury to only deliberate when all twelve jury members were present and failed to properly admonish the jury during recesses; thus, she claims, that she was denied her constitutional right to a unanimous jury and a fair trial. Specifically, Jesmer states that "[m]issing, however, are any written or oral instructions informing the jury of its constitutional duty to deliberate only when all 12 jurors are present. Nor did the court ever admonish jurors [that] they were precluded from discussing the case with anyone during any recess." Br. of Appellant at 28. Although Jesmer did not request such an instruction nor object at trial, she argues that these errors are manifest errors affecting a constitutional right and may be raised for the first time on appeal.[3] We disagree and hold that the trial court properly instructed the jury on how to deliberate and properly admonished the jury to not discuss the case during recesses.

An appellate court may refuse to review any claim of error which was not raised in the trial court. RAP 2.5(a). However, a party may raise a "manifest error affecting a constitutional right" for the first time on appeal. RAP 2.5(a)(3). We review alleged errors affecting jury unanimity as a manifest error affecting a constitutional right. *See State v. Lamar*, 180 Wn.2d 576, 586, 327 P.3d 46 (2014).

---

[3] Alternatively, she argues that these are "structural errors." Br. of Appellant at 31. However, because we determine that the trial court did not err in its instructions or its admonishments to the jury, we do not consider Jesmer's structural error argument.

Jesmer relies on *Lamar* but misconstrues the holding. In *Lamar*, a sick juror was replaced by an alternate during deliberations. *Lamar*, 180 Wn.2d at 580. When the sick juror was excused, the instruction on unanimity was not repeated and instead the remaining jurors were affirmatively told to bring the alternate "up to speed" on the deliberations that had already taken place and then continue deliberations from that point. *Lamar*, 180 Wn.2d at 582. "This instruction affirmatively told the reconstituted jury *not to deliberate together* as is constitutionally required." *Lamar*, 180 Wn.2d at 582. Our Supreme Court held that the failure to repeat the unanimity instruction after the alternate juror was seated deprived the defendant of a unanimous jury because the new juror would not have taken part in some of the deliberative process. *Lamar*, 180 Wn.2d at 586.

Here, unlike in *Lamar*, no alternate juror deliberated and all of the jurors received the same admonishments and instructions. Further, the trial court gave identical instructions to the jury at the beginning of the deliberations as the Supreme Court implicitly approved of in *Lamar*.[4]

Jesmer cites no case law holding that there is a constitutional requirement that the instruction requiring the jurors to deliberate together needs to be given and, further, Jesmer did not

---

[4] The instruction requiring that the jurors deliberate together states,

> As jurors, you have a duty to discuss the case with one another and to deliberate in an effort to reach a unanimous verdict. Each of you must decide the case for yourself, but only after you consider the evidence impartially with your fellow jurors. During your deliberations, you should not hesitate to re-examine your own views and to change your opinion based upon further review of the evidence and these instructions. You should not, however, surrender your honest belief about the value or significance of evidence solely because of the opinions of your fellow jurors. Nor should you change your mind just for the purpose of reaching a verdict.

CP at 49; *Lamar*, 180 Wn.2d at 580.

propose such an instruction at trial.[5] "[W]here no authorities are cited in support of a proposition, the court is not required to search out authorities, but may assume that counsel, after diligent search, has found none." *DeHeer v. Seattle Post-Intelligencer*, 60 Wn.2d 122, 126, 372 P.2d 193 (1962), RAP 10.3(a)(6). Because Jesmer cites no authority that informs this court whether or not the failure to give duty to deliberate instructions is error, we hold that the trial court properly instructed and admonished the jury.

## CONCLUSION

We hold that because Jesmer was able to fully argue her theory of the case, without the proposed quitclaim deed instruction, the trial court did not abuse its discretion in not giving the instruction. We further hold, that because the trial court properly instructed the jury on how it

---

[5] Jesmer cites only to the Washington Supreme Court Committee on Jury Instructions' (WPIC) recommendation as the authority supporting her argument. She argues that "[d]espite the committee's recommendation to give the full WPIC 4.61 before every recess, it was never provided during Jesmer's three day trial." Br. of Appellant at 27. However, Jesmer then details that the trial court did in fact admonish the jury in six out of the eleven recesses during trial. In each of these admonishments, the trial court instructed the jury not to discuss the case with anyone. *See* VRP at 264. Because we presume that jurors follow the trial court's instructions, absent evidence to the contrary, we conclude that the trial court did not err. *See State v. Dye*, 178 Wn.2d 541, 556, 309 P.3d 1192 (2013).

should deliberate and properly admonished it not to discuss the case during recesses, the trial court did not deprive Jesmer of a unanimous verdict. Thus, we affirm the convictions.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

SUTTON, J.

We concur:

WORSWICK, P.J.

LEE, J.